55  362
68  159
55  362
85  385
55  362
116 347

55  362
s21NW 429
e129 301

ORMOND F. HUNT v. ALONZO EATON.

*Witness—Wife against husband—Debt to wife—Title—Privileged communications.*

1. A wife can testify in an action brought by her assignee against her husband for the non-performance of a contract between them with reference to her separate property. How. Stat. § 7546. And under such circumstances evidence may be given of communications made in the confidence of the marriage relation.

2. A debt from a husband to his wife is her separate property which she can assign, sell, devise or transfer by gift.

3. Title is that which makes the foundation of the ownership of property, real or personal; *e. g.* title to a debt consists in the facts which, taken together, created the contract relations of the parties thereto.

4. No communications passing between husband and wife in the confidence of married life can be given in evidence by either without the other's consent, unless they relate to the title to separate property in litigation between them.

Error to the Superior Court of Detroit. (Chipman, J.) October 23.—November 19.

ASSUMPSIT. Defendant brings error. Affirmed.

*Edgar Weeks* and *W. B. Jackson* for appellant.

*Griffin & Warner* for appellee, cited as to a wife's power to make contracts: *Markham v. Markham* 4 Mich. 305; *Cannel v. Buckle* 2 P. Wms. 243; *Starkweather v. Smith* 6 Mich. 377; *White v. Zane* 10 Mich. 333; *Wales v. Newbould* 9 Mich. 74; *Fisher v. Provin* 25 Mich. 350; *Jenne v. Marble* 37 Mich. 319; *Randall v. Randall* 37 Mich. 563; *Webster v. Webster* 58 Me. 139; *Hobbs v. Hobbs* 70 Me. 381; *Whitford v. Daggett* 84 Ill. 144; *Larison v. Larison* 9 Brad. 27; *Scott v. Scott* 13 Ind. 225; *Blake v. Blake* 64 Me. 177; *Butterfield v. Stanton* 44 Miss. 16; *Adams v. Adams* 24 Hun 401; *Green v. Carlill* L. R. 4 Ch. Div. 882; *Minier v. Minier* 4 Lans. 421; and as to her right to testify as to transactions between herself and her husband, in an action brought against him by a third person on the strength thereof: *Dexter v. Booth* 2 Allen 559; *Bliss v. Franklin* 13 Allen 244;

*Robinson v. Talmadge* 97 Mass. 171; *Jacobs v. Hesler* 113
Mass. 157; *Drew v. Tarbell* 117 Mass. 90; *Fay v. Guynon*
131 Mass. 31; *Campbell v. Chace* 12 R. I. 333; *Wood v.
Chetwood* 27 N. J. Eq. 311; *Westerman v. Westerman* 25
Ohio St. 507; *Sessions v. Trevitt* 39 Ohio St. 259; *Higbee v.
McMillan* 18 Kan. 133; *Bird v. Hueston* 10 Ohio St. 418;
*Roberts v. Porter* 78 Ind. 132; *Mercer v. Patterson* 41 Ind.
440; *Griffin v. Smith* 45 Ind. 366; *Stanley v. Schultz* 47
Ind. 217; *Hutchason v. State* 67 Ind. 451; *Brown v. Norton*
67 Ind. 424; *Carney v. Gleissner* 58 Wis. 674, citing *Mills
v. United States* 1 Pin. 73 and *Birdsall v. Dunn* 16 Wis.
235; *White v. Perry* 14 W. Va. 79; 1 Greenl. Ev. (14th ed.)
§ 254; *Stein v. Bowman* 13 Pet. 220; *Marsh v. Potter* 30
Barb. 506; *Sage v. McLaughlin* 34 Wis. 550; *Krouskop v.
Shontz* 51 Wis. 204; *Rich v. Rich* 12 Minn. 468; *Boyd
v. DeLaMontagnie* 73 N. Y. 498; *Teller v. Bishop* 8 Minn.
226; *Grabill v. Moyer* 45 Penn. St. 530; *Patten v. Patten*
75 Ill. 446; *Whitford v. Daggett* 84 Ill. 144; *Smyley v.
Reese* 53 Ala. 89, 101.

CHAMPLIN, J.   In 1880 Alonzo Eaton and Ellen V. Eaton
were married.   At this time Mr. Eaton was in straitened cir-
cumstances, and Mrs. Eaton had in her hands something like
$5000 which belonged to her daughter by a former marriage.
At Mr. Eaton's request she loaned him from time to time
sums of money amounting in the aggregate to $600, and also
paid a number of bills for household expenses and wearing
apparel, the whole amounting at the time of the commence-
ment of this suit, including the money loaned, to $3322.58.
She took no written evidence from him of any agreement
in reference to these loans and advances, but the next day
after their marriage, or within ten days after the nuptials
were celebrated, in the privacy of their chamber and with no
one else present, he agreed and promised his wife that if she
would make advancements of money to take care of the
house and whatever money she should let him have, he
would pay her back every dollar when he sold a certain
homestead which he owned and which was encumbered by a
mortgage.   Mr. Eaton not having sold the homestead, and
having repudiated any liability to his wife, she assigned her
claims against her husband to the plaintiff, who has brought

this suit.    Mr. and Mrs. Eaton, at the time of the trial, were living together as husband and wife.

To prove his case the plaintiff introduced as a witness Mrs. Eaton, the wife of defendant. The defendant objected to her testifying.    The plaintiff's counsel proposed to prove by the witness the facts above narrated ; and thereupon the counsel for defendant insisted upon his objection for the reason that the wife is not a competent witness to testify against her husband in an action brought in her own behalf, nor in an action where the subject-matter of the suit is brought by her assignee.    The judge of the Superior Court of Detroit overruled the objection, and permitted the witness to testify fully as to what occurred between the defendant and witness relative to the agreement as to advances and repayment, not made in the presence of other persons and while they were husband and wife.    To this the defendant excepted, and it constitutes the main ground of error relied upon for a reversal of the judgment.

Whether this testimony was competent depends upon the construction to be given to How. Stat., § 7546, which reads as follows :

"A husband shall not be examined as a witness, for or against his wife, without her consent; nor a wife, for or against her husband, without his consent, except in cases where the husband or wife shall be a party to the record, in a suit, action, or proceeding where the title to the separate property of the husband or wife, so called or offered as a witness, or where the title to property derived from, through, or under the husband or wife so called or offered as a witness, shall be the subject-matter in controversy or litigation, in such suit, action, or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding ; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto, without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to

the other, during the marriage; but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify."

And this section of the statute must be construed in connection with § 6297, relative to the rights of married women, which reads as follows: "Actions may be brought by and against a married woman in relation to her sole property, in the same manner as if she were unmarried."

The first question that arises, in applying this statute to the facts of this case, is whether it comes within the exception. Is it a case where the title to the separate property of the wife is the subject-matter of controversy or litigation, in opposition to the claim or interest of the husband? For the purpose of disposing of this question, I will treat the money loaned and advanced, as the separate property of the wife. The husband is a party to the record, and the plaintiff's title is derived through the wife called as a witness in opposition to the claim or interest of the husband.

This is a controversy in assumpsit to recover damages for the non-performance of a contract made between the husband and wife with reference to her separate property. By this contract the relation of debtor and creditor was created, and this debt became and was the separate property of the wife. She could transfer it by assignment; she could dispose of it by gift, devise or sale as fully and completely as she could a like claim against a third person.

"Title" is defined by Bouvier as "the lawful cause or ground of possessing that which is ours." It is that which is the foundation of ownership of property real or personal. The *title* of the wife to this debt consists in the *facts* which taken together created the contract relations of the parties thereto.

Now when the title to the separate property of either is in litigation between husband and wife, the statute removes the common-law disability and permits either to testify to the facts which lie at the foundation of the ownership of the property as fully as if such marriage relation did not exist.

The clause of the statute prohibiting either, during marriage or afterwards, without the consent of both, being examined as to any communication made by one to the other during the marriage, does not apply to cases of this kind. To hold that it did would nullify in a great measure the language which precedes it and make a limitation upon the exception where in my opinion none was intended. The communications inhibited do not relate to contracts entered into between the husband and wife in relation to the separate property of either, when the title to such separate property is in litigation and the parties to the record are within the excepted cases mentioned in the statute.

While I do not consider it necessary to indicate the nature of the communications between husband and wife about which neither is allowed to be examined, I may say generally that the statute aims to protect all those private confidences which the relation of husband and wife holds as sacred, the disclosure of which might introduce strife, malevolence and discord into the married life, and includes every communication between them other than such as involves the title to the separate property of either when it becomes necessary to resort to litigation to obtain, secure or protect the rights of either to such separate property.

No doubt society is interested in preserving the harmony of the marriage relations and anything which tends to disrupt those relations is to be discountenanced. The Constitution has secured to a married woman the right of acquisition, enjoyment and disposition of her separate property, and the Legislature has given her the same standing in the courts with respect thereto as if she were unmarried; and there is no good reason why she should not have the means of protecting those rights as fully against her husband as against any other person. I think the Legislature has done so in the statute cited. So far as the destruction of harmony in the family circle is concerned, the injury is inflicted when the husband or wife fail to keep their agreements with each other respecting the separate property, and the strife and bickerings consequent thereon long precede the shock caused by

permitting the party to' testify respecting the title to such property. There is no error in the record and
    The judgment is affirmed.

    The other Justices concurred.