ELLEN V. EATON AND ORMOND F. HUNT v. ALONZO
EATON ET AL.

*Equity—Joinder of parties—Plea in bar—Homestead.*

1. The legal and equitable owners of a judgment may join in a bill
   to protect a levy made upon real estate under an execution issue l
   on said judgment; and an objection to such joinder, if available,
   should be raised by demurrer.

2. Where the purpose, objects, and parties in two equity suits are
   different, the pendency of one cannot be pleaded in bar of the
   other.

3. Where all of the parties who appear to be interested in undischarged
   mortgages claimed by the complainant, in a bill filed to secure
   their discharge, to have been paid and fraudulently kept alive,
   are before the court, the *possible* interest of others in the securities
   cannot be urged as a reason for denying the relief prayed for.

4. On the facts stated in the opinion, the complainant Eaton is held
   to have homestead, as well as judgment creditor's rights to pro-
   tect, and to be entitled to the relief sought.

Appeal from superior court of Detroit. (Chipman, J.)
Argued October 19, 1887. Decided January 12, 1888.

Bill filed to secure the discharge of certain mortgages, and
for other purposes. Defendants appeal. Decree affirmed.
The facts are stated in the opinion.

*Griffin & Warner,* for complainants.

*D. C. Griffen* (*J. Willard Babbitt,* of counsel), for defend-
ants.

SHERWOOD, C. J. This case comes before us from the
superior court of the city of Detroit.

The complainant Ellen V. Eaton is the wife of the defend-
ant Alonzo Eaton, whom she married on the twentieth day of

November, 1880, and who abandoned her on the eighteenth of June, 1884, and defendants Caleb and Hiram are his brothers.

The defendant Alonzo Eaton, at the time of his marriage with the complainant Ellen V. Eaton, owned city lot No. 9, in subdivision of Park Lot 65, on the south side of Parsons street, in the city of Detroit. At the time of the marriage they went to reside on the Parsons street property, and Mrs. Eaton has continued to reside there ever since.

On the twenty-sixth day of February, 1884, Ellen V. Eaton held a claim against her husband for moneys advanced to him after her marriage, to the amount of $3,322.58. On or about the date last stated she assigned and transferred her interest in this claim to the complainant Hunt, giving him full power to sue for and collect the same. This assignment was made to said Hunt for the use and benefit of Mrs. Eaton, the assignor, and as trustee for her. Suit was subsequently brought against Alonzo Eaton upon this claim in the superior court of Detroit, by said Hunt, and on the twentieth day of June, 1884, judgment was rendered therein in favor of Hunt for $3,361.48, which judgment was subsequently affirmed in this Court. See *Hunt v. Eaton*, 55 Mich. 362 (21 N. W. Rep. 429). On the third day of July, 1884, execution upon said judgment was levied upon said lot No. 9, on Parsons street.

At the time of this levy there were two mortgages upon the lot, as the complainant was informed by her husband,— one made September 3, 1877, and made to Mary L. Eaton; the other dated February 4, 1878, and made to Fannie B. Reed. Both of these mortgages were subsequently assigned to Hiram Eaton, another brother of Alonzo. Hiram subsequently instituted foreclosure proceedings upon these mortgages in the circuit court for the county of Wayne, and a decree was rendered on or about the twenty-sixth day of February, 1885, against Alonzo Eaton and Ellen V. Eaton,

wherein it was adjudged and determined that there was due upon the Eaton mortgage at the date of the decree the sum of $1,731.66, and interest thereon from December 26, 1884; and that there was due the complainant upon the mortgage dated February 4, 1878, the sum of $420; and that there was to grow due upon said last-mentioned mortgage the sum of $20 per month from February 20, 1885, during the lifetime of said Fannie B. Reed, for each month that the said Fannie B. Reed preferred to live apart from the home of said Alonzo Eaton; and that there was also due at the date thereof, for amount paid for taxes to protect the lien of said mortgage, the sum of $315.62, and interest thereon at seven per cent. from December 26, 1884; and that, in default of the payment of said amounts on or before the tenth day of March, 1885, the said property was directed to be sold at public auction by or under the direction of a commissioner, at any time after the said tenth day of March, 1885.

Said property was advertised and sold under said decree by the defendant John D. Canfield, as circuit court commissioner, on the twenty-first day of May, 1885, and the property was bid off by C. E. Warner, for the use and benefit of Ellen V. Eaton, for the sum of $4,525.

At said sale it was represented that no other claims except said decree and said levy were against the property, and such statements were made in answer to inquiries upon the subject, and in the presence of Alonzo and Caleb Eaton, who were present at the time. Neither Alonzo nor Caleb made any statement to the contrary at the time, but it is claimed that Caleb had a party at the sale by the name of Jepp, who bid upon the property in the interest of Caleb. Mrs. Ellen V. Eaton claims that the property was not worth more than the sum bid for it by Warner, and that said Jepp bid $4,500 for it. It further appears that she is ready and willing to pay the sum at which the property was struck off to Warner, and has paid the sum of $25, but, notwithstanding this,

Hiram Eaton, instigated by Caleb, has directed a resale of the property by the commissioner, and that defendant Canfield, in compliance with such direction, has already commenced advertising the property for sale again under said decree.

After the sale, and before the commissioner's deed was executed and delivered, certain other mortgages were discovered to be undischarged upon the records, as follows:

1. A mortgage by Mary M. Rossman to Augustus H. Emory, dated December 13, 1873, for $900, and December 19, 1873, assigned by Emory to Alonzo Eaton, and December 19, 1873, assigned by Alonzo Eaton to Frederick B. Hooper, and March 3, 1874, assigned by Hooper to defendant Caleb Eaton.

2. A mortgage by Mary M. Rossman to Alonzo Eaton, December 18, 1873, for $1.000, and March 4, 1874, assigned by Alonzo Eaton to Caleb Eaton.

3. A mortgage by Mary M. Rossman to Sylvester Noble, February 14, 1874, $628, and on February 21, 1874, assigned by Noble to Caleb Eaton.

On September 12, 1885, there was placed on record an assignment of the last-mentioned mortgage by Caleb Eaton to his wife, Frances A. Eaton, bearing date July 2, 1885, and Frances A. Eaton was subsequently made a party to complainants' bill, which was properly amended for that purpose.

It is claimed by the complainants that, although the last three mortgages mentioned were not discharged of record, yet they were not valid securities upon the property; that they had been paid and satisfied; and that the defendant Caleb Eaton held and continued the same upon record as an ostensible lien upon the property, and as a cloud upon the title, by a fraudulent collusion with the said Alonzo Eaton and Hiram Eaton, with a view of deterring persons from bidding upon the mortgage sale thereof other than themselves, and of preventing competition in bidding therefor, and of defeating and defrauding complainants in the collection of the amount due to them.

68 MICH.—11.

Six paragraphs of the bill of complaint contain the allegations of fact bearing upon the alleged fraudulent character of the mortgages last described, and the rights of the complainants to have them dealt w.th accordingly.   The prayer of complainants' bill is substantially as follows:

1. That these three mortgages may be decreed to be no longer a lien upon the premises described, they having been satisfied and merged in the conveyance of the property to Alonzo Eaton.

2. That Caleb may be decreed to discharge the mortgages of record.

3. That Hiram, Caleb, and Canfield may be restrained from making sale under the foreclosure decree of the circuit court until the mortgages are discharged.

4. That Canfield may be directed to execute a deed to Ellen V. Eaton of the property bid off by Warner for her upon the payment of the balance of the bid, $4,500.

5. And that complainants may have such other and further relief as may be agreeable to equity.

The amended bill charged that the transfer of the last-named mortgage from Caleb to his wife (and it appears complainants had no knowledge of any such assignment until it was placed on record) was made without consideration, and *mala fide* as against complainants, and with a view and design of further defeating, delaying, and defrauding complainants, and of embarrassing them in the collection of their debt, and prayed that the said assignment might be set aside and held for naught, and that Frances Eaton might be decreed and declared to discharge the same of record.

Defendants Caleb and Alonzo Eaton answered, denying the material allegations of complainants' bill with respect to the said three mortgages.

Defendant Frances A. Eaton pleaded and answered to the amended bill, wherein by her plea she set up certain proceedings pending in the circuit court for the county of Wayne, in chancery, for the foreclosure of said mortgage, which was assigned to her, and which proceedings she alleges were com-

menced in said court on September 12, 1885, and which she claimed by such plea were a bar to complainants' bill in this cause. This plea was followed by an answer which denied all the material allegations of the amended bill, and in which she averred that the said mortgage was transferred to her for a valuable consideration, and without any design of defeating, delaying, or defrauding complainants.

The defendants all filed separate answers, and each denied the charges of fraud, or denied having knowledge of any of the facts from which it is claimed.

The complainants claim throughout that Caleb's and Hiram's interests in the matter are identical, and that Caleb, acting in collusion with Alonzo, allowed his own wife, Frances, to use the Noble mortgage to aid him in his efforts through trickery and fraud to defeat the complainants in collecting their debt.

A large volume of testimony was taken in the case, which was heard before the learned judge of the superior court of Detroit, who, after due deliberation thereon, rendered a decree substantially in accordance with the prayer of the bill. All the defendants appeal.

The $1,000 mortgage given by Mary M. Rossman to Alonzo Eaton, and by him assigned to Caleb, was discharged of record during the pendency of this suit in the court below.

Upon the undisputed testimony in this case there could be no objection to joining the complainants in this suit, as has been done. Hunt held the legal title to the judgment, while the equitable ownership of the claim was in Ellen V. Eaton. But if there had been such objection, the defendants should have resorted to a demurrer.

Neither can the plea of defendant Frances A. Eaton be sustained. Her suit to foreclose the Noble mortgage cannot be made a bar to this suit. The purpose, objects, and parties in the two suits are different, and her plea has no application to the case; and it would be most unjust to allow

such a plea to prevail, since the Noble mortgage has long since been discharged of record.   Story, Eq. Pl. § 736.

It is insisted by counsel for the defendants here that the only possible claim the complainants can have is that of an ordinary execution creditor, seeking to set aside a paid-up or satisfied mortgage allowed to remain of record undischarged, but claimed by the holder as a valid existing security as against the rights of complainants.

We do not think the creditor rights of Ellen V. Eaton in this case were the only interests she had to protect in this suit.   From the time of her marriage her husband, Alonzo Eaton, had been indulging spendthrift habits.   He was not only dissipated, but failed to provide for his family.   He allowed the interest to accumulate upon the valid mortgages upon his property, and allowed the mortgagees to pay the taxes upon the homestead to protect their securities.   So far as appears it was his wife's only homestead, and which he had himself not only abandoned, but, after doing so, conspired and confederated with others to revive old paid-up mortgages against the same, which, if allowed to be foreclosed, being prior to her marriage, would not only deprive her of collecting her debt, but would further and finally result in cheating and defrauding this wife out of her home and her homestead rights.   We think her bill covers the case, and courts of equity cannot allow such a result.

The case of *Brigham v. Fawcett*, 42 Mich. 542 (4 N. W. Rep. 272), cited by counsel for defendants, has but little or no application to the case here.   It was to protect her home as well as collect her judgment that Mrs. Ellen V. Eaton caused the bill in this case to be filed.   It is not the only theory (as is claimed by counsel for the defendants) upon which the old mortgages can be held fraudulent and void that Ellen V. Eaton has a judgment upon the property, based upon money lent to her husband upon the faith of Caleb's statement to her that no mortgages except those to Mary L.

Eaton and Fannie B. Reed existed upon the property. Her homestead rights were of quite as much concern as that of securing her judgment.

It is further insisted by counsel for defendants that, if the old mortgages are void as to the complainants, they may not be as to others, and therefore they should not be discharged. There is nothing, however, in this. All the parties interested in them, so far as appears, have been before the court, and if their mortgages have been satisfied there is no reason why they should not be discharged.

We have reviewed this record, and are satisfied that the conclusion reached by the judge of the superior court is just, and should be affirmed.

The other Justices concurred.