1829

Squire<br>v.<br>Harder.

[*494]

---

## SQUIRE AND WIFE v. HARDER AND OTHERS.

No resulting trust can be raised in favor of a grantor in opposition to the express terms of his conveyance.

Where the grantor conveys in fee with warranty, he is estopped from alleging that he had an interest in the purchase-money which created a resulting trust in his favor.[3]

---

[3] See *Sweet* v. *Green*, *ante*, 473; and authorities cited in note.

1829.

Squire
v.
Harder.

This court will not decree a specific performance of an agreement made by a husband in relation to the real estate of his wife, to which she was not a party.

He can make no agreement which will affect her rights, without her consent.

July 8th.

THIS was a bill for the partition of a certain mill property in the county of Columbia, which formerly belonged to George Harder deceased. The complainant, Rebecca Squires, was one of Harder's children; and his widow and other children were the defendants. The complainants alleged that Harder died seized of the mill property, and the undivided half of a farm; that one-half of the mill property was sold by his administratrix under an order of the surrogate, and was purchased by Oliver Squire one of the complainants; that the undivided half of the farm was sold by the widow and the heirs; and that she received one-third of the purchase-money, and agreed to lay it out in land for her use during life, and that after her death it should go to the heirs; that she afterwards purchased from Squire his undivided half of the mill property. The heirs claim the sixth part of one half, subject to the widow's right of dower for life, and the sixth part of the other half subject to her life estate therein. The defendants admitted the descent of the property as charged in the bill, and the sale and re-

[*495]

sale of one-half of the mill property. They *also admitted the sale of the half of the farm, and that the widow received one-third of the purchase-money; but they denied there was any agreement that she should lay it out in lands, for the benefit of the heirs after her death. On the contrary they alleged, that it was the understanding and agreement of the parties that she should keep that one-third for her own use; and that about $400 of the purchase-money of the mill property was raised by other means. They also alleged that Harder died seized of 1,375 acres of wild land, in which the widow was entitled to dower; and that it was agreed by all the parties that she should release her right of dower in those lands, and in consideration thereof that she should have the use of the whole of their half of the

mill during life; that in pursuance of that agreement, they made partition of the wild land among themselves, and she took possession of the whole of the mill property; and all the defendants prayed a specific performance of that agreement. The cause was heard upon pleadings and proofs.

*A. L. Jordan* for the complainants.

*C. Bushnell* for the defendants.

THE CHANCELLOR:—The allegation in the bill that Mrs. Harder agreed to lay out the money received for the farm in other real estate, for the benefit of the heirs after her death, is absolutely denied in the answer, and is not supported by proof. There can, therefore, be no doubt that the widow is absolutely entitled to one-half of the mill property in fee. The other ground assumed by the complainant's counsel, that she purchased it with the moneys received for the farm, in which she had only a life interest, and that there was a resulting trust in their favor on the purchase, is wholly untenable. No resulting trust can be raised in opposition to the express terms of the conveyance, and in favor of the grantor. In this case the complainants have given an absolute conveyance of the inheritance, with warranty. They are, therefore, estopped from alleging that a part of the consideration was received in their own money, and that she only took a life estate as to the one-sixth. If they did not *voluntarily relinquish their claim on that money, their claim was personal on her; but they have no legal or equitable interest in the premises conveyed.

From the testimony taken in the cause, I am induced to believe there was a verbal understanding, that she should have the use of the other half of the mill property for life, as an equivalent for her dower in the wild lands. Whether that dower right was or was not of nearly the same value cannot be material in the view I have taken of this question. There was no valid agreement which can now

[*496]

1829.

Squire
v.
Harder

be enforced against the complainants, inasmuch as they set up the statute of frauds. There has been no part performance of that agreement to take the case out of the statute. The partition of the wild land among the heirs did not affect her interest in the least. They had the right, and probably would have done the same thing, if no agreement as to the dower had been made. Neither does it appear from this testimony that she took possession or has made any permanent repairs on the mill property under that agreement. She was already in possession as the absolute owner of one-half, and as tenant in dower of one-third of the residue. I do not understand that any change took place at the time of that agreement. Besides, there is another insuperable objection to a specific performance of that agreement, even if it had been reduced to writing. The right in the mill property belonged to the wife, and the husband could not make any agreement which would destroy her right, without her consent. The other heirs having in their answer set up this parol agreement and joined in a prayer for a specific performance thereof, it must be so decreed as against them.

There must, therefore, be a decree for a partition of the premises among the parties accordingly; but as the parol agreement has probably prevented the widow from asserting her right to dower in the wild land which fell to the share of the complainants, the partition must be without any account against her for the rents and profits of the mill property which belonged to Squires, in the mean time; and the rights of the respective parties are declared as follows: The complainants, in right of the wife, are entitled to one-twelfth part of *the premises, subject to the life estate of the widow in one-third of that twelfth; each of the other heirs is entitled to one-twelfth, subject to the life estate of the widow in the whole of that twelfth; and the widow is entitled to six-twelfths in fee, and to a life estate in five-twelfths, and one-third of one-twelfth of the residue.

[*497]

As it is very certain from the testimony that the premises cannot be divided, the decree must direct a reference to a master in the county of Columbia to ascertain and report whether the premises are so circumstanced that partition thereof as aforesaid cannot be made without great injury to the owners thereof; and that on the coming in and confirmation of that report, if it shall appear that partition cannot be made, the premises be sold by a master on the usual notice; and that he give a deed thereof to the purchaser, and pay to the solicitors of the respective parties their taxable costs; that they pay one-half of the residue of the purchase-money to the widow, and two-thirds of one-twelfth to the complainants; and if the parties cannot agree to a division of any share or shares of the residue, in which the widow is entitled to a life interest, that he bring the same into court and deposit it with the register, to be invested in such manner that the widow may receive the income thereof for life, and that after her death it be paid to the parties entitled thereto, according to their right as above declared.