### *In re* BENSON.

*(Monroe County Court.* April 11, 1891.)

1. WITNESS—COMPETENCY—PHYSICIAN—INQUISITION IN LUNACY.
   Code Civil Proc. N. Y. § 834, which prohibits a physician from disclosing any information which he acquired in attending a patient in a professional capacity, does not apply to an inquisition in lunacy, as no one can be better qualified to testify to the sanity or insanity of the supposed lunatic than the physician who attended him.

2. SAME—WHO MAY OBJECT.
   Where, on an inquisition in lunacy, no objection was made on behalf of the supposed lunatic calling in question the competency of his physician to testify on the subject, the contestant of a motion to confirm the finding of the jury establishing the lunacy is in no position to raise the question.

3. NEW TRIAL—PRESENCE OF DEPUTY-SHERIFF IN JURY-ROOM.
   The mere presence of the deputy-sheriff in the jury-room during the deliberation of the jury in an inquisition in lunacy, without participating in the proceedings or knowing how the jurors voted, is no ground for setting aside the findings of the jury.

On motion to confirm the findings of a jury in an inquisition as to the lunacy of George Benson, and to appoint a committee of his person and property. Motion granted.

*John D. Burns,* for the motion.     *Delbert A. Adams,* opposed.

WERNER, J.  A careful examination of the evidence shows that the finding of the jury is justified, and the question to be determined is whether there has been any irregularity in the proceedings which vitiates them, or which is good ground for setting aside the inquisition and ordering a new hearing. It is urged on behalf of the contestant that the admission of the testimony of Dr. Mann, who appears by an affidavit filed with these proceedings to have been the regular physician of the supposed lunatic for some time past, was

erroneous, and that the same should have been excluded under section 834.[1] I do not think the point well taken. I do not think the section applies to a proceeding of this character. No physician can be better qualified to testify to the sanity or insanity of a person than he who has for some time attended such person in a professional capacity. Indeed, the cases are not rare where none but an attending physician could intelligently testify to a person's mental condition. But, even if it should be held that section 834 applies to such a proceeding as this, it distinctly appears that no objection was made on behalf of the supposed lunatic. I do not think that the contestant of this proceeding stands in a position to raise this question. While it is true that the incompetent person cannot in terms waive any of his rights, so, on the other hand, in a proceeding of this character, all evidence legitimately bearing upon the subject of the inquiry is competent, unless the objection is distinctly made. Again, the contestant relies upon the case reported in 1 Paige, 497, (*In re Arnhout*,) as an authority for the proposition that the presence of the deputy-sheriff in the jury-room rendered their deliberations and finding void. The case, as reported, does not disclose the precise facts upon which the finding of the jury was set aside, but it clearly indicates that there was some positive interference on the part of the deputy-sheriff with the proceedings of the jury which influenced their action and which vitiated their proceedings. This is apparent from the fact that, upon a subsequent proceeding, the precept for the summoning of the jury was ordered to be executed by the coroner instead of the sheriff. In this case it appears that while the deputy-sheriff was in the room he took no part in the proceedings of the jury, and did not know how the jurors voted. While it would undoubtedly have been better for the officer in attendance to have been outside of the room while the voting was being done, I do not think his mere presence in the room is sufficient ground for reversing the finding of the jury. In the case of *People* v. *Flack*, (Sup.) 10 N. Y. Supp. 475, a case very much stronger than this, it was held that the presence of a reporter in the jury-room while the jury were conducting their deliberations was not a sufficient ground for setting aside the verdict of the jury. The stipulation submitted as a part of the record and the affidavits of the jurors show conclusively that the officer took no part whatever in the proceedings of the jury, and that his presence in the room was a mere accident or inadvertence which in no wise affected the result of the proceedings. To hold that this is sufficient to vitiate the proceeding would be contrary to common sense. The remarks made by the chancellor in 1 Paige, 497, were evidently based upon misconduct which was clearly sufficient to invalidate the proceedings, and, so far as they relate to the practice more recently followed of permitting counsel to sum up in a controverted case, cannot be considered as authoritative. The opinion in *Re Church*, 64 How. Pr. 394, correctly lays down the modern practice in cases of this character. I do not think that anything has been done in this case which affects the validity of the proceeding, and, if the evidence upon a subsequent hearing were the same as upon the first one, the result would undoubtedly be the same, no benefit would accrue, and the estate of the alleged incompetent would be charged with an increased expense. In view of these facts, I feel constrained to confirm the inquisition and proceedings taken herein, and to make an order for the appointment of a committee. Counsel for petitioner is hereby allowed $75 as his costs of the proceedings besides the expenses and disbursements thereof, and counsel for the contestant is allowed the sum of $50. Let an order be entered accordingly.

[1] Code Civil Proc. N. Y. § 834, provides: "A person, duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."