OPINION OF THE COURT
C. Raymond Radican, J.
In this contested probate proceeding which, in addition, includes counterclaims by the contestants to set aside certain inter vivos transactions made by the decedent, the contestants move to examine a Dr. Vengos, a Swiss psychiatrist who treated the decedent.
An unsworn statement by Dr. Vengos dated December 26, 1979 (shortly before the execution of the instrument offered for probate on March 14, 1980) was submitted by the surviving spouse in a proceeding to have a conservator appointed for the decedent. The statement characterizes the decedent as suffering from “alcoholic Encephalopathia and other arteriosclerotic troubles of the brain.” A comprehensive psychiatric report was annexed to the statement as “exhibit A” and details decedent’s various mental dysfunctions including lack of orientation to time and space, memory failures, inability to make decisions and susceptibility to influence of others.
But for the interposition by the proponent of the physician-patient privilege (CPLR 4504), sufficient special circumstances (CPLR 3101, subd [a], par [4]) are normally *417 present in a will contest involving testamentary capacity to warrant the examination of a treating physician (Matter of Corey, 275 App Div 53; Matter of Danilow, 118 NYS2d 522).
Two aspects of the patient privilege are presented: one, whether the privilege was waived by the decedent in the conservatorship proceeding and the other, the circumstances under which a waiver may be effected after death in a will contest.
The courts in New York are in conflict as to the applicability of the physician-patient privilege in incompetency or conservatorship proceedings (see Matter of Allen [Mauceli], 24 Misc 2d 763 [holding the privilege inapplicable]; contra Matter of Gates, 170 App Div 921; Matter of J. D., 107 Misc 2d 288). In any event, a waiver by the patient is required to be voluntary or the result of some voluntary act on his part (Koump v Smith, 25 NY2d 287 [mere general denial by defendant insufficient to waive his privilege]; Apter v Home Life Ins. Co., 266 NY 333, 337). However, the conservatorship record does not reveal that the decedent remained mute on the introduction of Dr. Vengos’ report, but countered with his own physicians’ reports supporting his position as to the lack of necessity for a conservator. Where the patient offers medical material otherwise privileged on his own behalf, he opens the door to the privileged material from other doctors such as Dr. Vengos who may have treated him (see Steinberg v New York Life Ins. Co., 263 NY 45; Strader v Collins, 280 App Div 582, 585). The conservatorship proceeding indicates an actual hearing was held by the court, at which time it considered the opposing medical reports on the question of ordering its own examination. Accordingly, the privilege is held to have been waived by the decedent in the conservatorship proceeding. Once waived, the privilege is waived for “ ‘all time’ ”, the statutory seal of secrecy having been broken (Strader v Collins, supra, p 585).
The second aspect, the circumstances applicable following death, is equally persuasive to a finding of an exception to the privilege. CPLR 4504 (subd [c], par 3) authorizes the contestants as distributees to waive the privilege in a will *418 contest, provided the information does not “tend to disgrace the memory of the decedent”. While it has been held that evidence that the decedent suffered from alcoholism disgraces the memory (Tinney v Neilson’s Flowers, 61 Misc 2d 717, affd 35 AD2d 532), conversely, testimony in a will contest that the decedent suffered from mental impair ment has been held not to disgrace his memory (Matter of Potter, 24 AD2d 812; Matter of Podolak, 10 AD2d 794). In addition, the lower court decision in Tinney concedes that the concept is a flexible one to be determined by the Trial Judge and “turns on whether the act would be viewed as disgraceful by common men” (p 719). Today, both Congress and the Legislature of this State view alcoholism as an illness which must be treated as a public health problem (US Code, tit 42, § 4541, subd [a], par [8]; Mental Hygiene Law, § 1.03, subd 13). A similar view has been taken by the Court of Appeals (Matter of Quinn v State Comm. on Judicial Conduct, 54 NY2d 386). Moreover, the Judicial Conference has recommended the elimination of any reference to disgracing the decedent’s memory as a difficult concept to apply and one which allows insufficient discretion to the Trial Judge (5 Weinstein-Korn-Miller, NY Civ Prac, par 4504.20). The Law Revision Commission’s commentary to its 1980 draft of the New York Proposed Code of Evidence similarly concludes that the “Provision is difficult to apply and frequently frustrates the interest of justice” (p 81).
Finally, the privilege has been suspended for certain purposes, such as in custody cases where the best interests of children override the importance of the privilege. In accomplishing this suspension “[mjuch reliance is placed upon a balancing of interests test expressed in Wigmore. Privileged communications should not be disclosed unless ‘[t]he injury that would inure to the relation by the disclosure of the communications [is] greater than the benefit thereby [granted] for the correct disposal of litigation.’ (8 Wigmore, Evidence [McNaughton rev], § 2285, p 527; emphasis in original.)” (Perry v Fiumano, 61 AD2d 512, 517.)
Certainly, nothing is more critical to the proper disposition of a will contest involving testamentary capacity than a full disclosure of all relevant medical information. Wig-more notes that where the testator’s mental capacity is in *419 dispute “medical testimony is absolutely needed for the purpose of learning the truth * * * [T]here [is no] reason for the party to conceal the facts, except as a tactical maneuver in litigation” (8 Wigmore, Evidence [McNaughton rev], § 2380a, p 831; emphasis added; see, also, Barker, Toward a New York Evidence Code: Some Notes on the Privileges, 19 NY L Forum 791).
The objections to the examination of Dr. Vengos on the ground of the patient privilege are overruled on condition that contestants file a waiver under CPLR 4504 (subd [c], par 3). The request that Dr. Vengos be directed to appear in New York for the examination is denied. Even if he were presumed to be the surviving spouse’s “agent”, proof of which is lacking (see Ludden v Erie Lackawanna Ry. Co., 38 AD2d 783), a requirement that he travel here would be onerous (Bottalico v Seaboard Coast Line R. R. Co., 33 AD2d 756; Ascona Cie., Anstalt v Horn, 32 AD2d 755).
Accordingly, the alternative request for the issuance of letters rogatory to examine Dr. Vengos on written questions in Switzerland is granted. The expenses are to be borne by the contestants in the first instance to be taxed as cost by them if successful (Cole v Manufacturers Trust Co., 253 App Div 749). The motion to the extent indicated is granted and otherwise denied.