OPINION OF THE COURT
Daniel F. Luciano, J.
This is a proceeding commenced by the petitioner, Laura *1037 Righter, as Administrator of St. John’s Episcopal Hospital, Smithtown, pursuant to article 81 of the Mental Hygiene Law for the appointment of a guardian for the personal needs and property management of the alleged incapacitated person, Rose Goldfarb.
The order to show cause and the petition, pursuant to which this proceeding was commenced, are supported by an annexed physician’s affirmation from a psychiatrist, Alan L. Steinberg, M.D. According to this affirmation "[o]n January 13, 1994, [he] examined Ms. Goldfarb and reviewed her medical record as her consulting psychiatrist.”
Rose Goldfarb has retained counsel to oppose the application, and has made a motion to dismiss the petition and to require the petitioner to pay any and all legal fees, costs and disbursements. Annexed as a part of an exhibit to Rose Goldfarb’s motion to dismiss, which has not yet been decided, is a "report of consultation” proposed by Bruce Rosen, M.D. which reflects a "date of consult” of "12/30/93”.
The matter has proceeded to the hearing stage, but no evidence on the merits has yet been received.
The petitioner has sought to have the said Alan L. Stein-berg, M.D., testify as a witness on its behalf.
Before Alan L. Steinberg, M.D. was able to offer any testimony as a witness on behalf of the petitioner the alleged incapacitated person, Rose Goldfarb, raised an objection thereto asserting the physician-patient privilege for which CPLR 4504 (a) provides. The respondent, Ted Moschonas, also argues that the proposed testimony is violative of the physician-patient privilege.
At that point the court conducted a voir dire to ascertain the circumstances under which Dr. Steinberg’s examination of the alleged incapacitated person, Rose Goldfarb, had been conducted. In the course thereof Alan L. Steinberg, M.D., testified that at the time of his first examination of Rose Goldfarb he had been called in only for a consultation by her attending physician, and not with respect to anticipated litigation. At the time of subsequent examinations he had an "inkling” that there might be an ensuing guardianship proceeding. He did not, however, at any time advise Rose Goldfarb that he might reveal the findings of his examinations in a court proceeding or that she could choose not to answer his questions or submit to his examination.
The court must now determine whether Alan L. Steinberg, *1038 M.D., should be permitted to testify with respect to the medical and psychiatric condition of Rose Goldfarb based upon his examinations of her.
The court’s review and analysis of Mental Hygiene Law article 81, discussed in more detail below, reveals that the statute appears to offer no definitive rules governing the admission of medical, psychological or psychiatric evidence which would be subject to the physician-patient privilege if not specifically permitted in a proceeding for appointment of a guardian.
Absent such statutory guidance it is appropriate to determine if controlling principles can be ascertained from case law in proceedings for appointment of committees or conservators, the predecessors to Mental Hygiene Law article 81 proceedings for appointment of a guardian.
In an early case (Matter of Benson, 16 NYS 111, appeal dismissed 61 Hun 624) the Court was confronted with the question of whether the submission of a physician’s affidavit violated the physician-patient privilege in a proceeding to determine the patient’s competency. Finding the statutory privilege inapplicable, the Court stated: "No physician can be better qualified to testify to the sanity or insanity of a person than he who has for some time attended such person in a professional capacity. Indeed, the cases are not rare where none but an attending physician could intelligently testify to a person’s mental condition.” (16 NYS, at 112.)
Without an expansive discussion of the surrounding facts, the Appellate Division, Third Department, expressed a contrary view in another old case stating: "It was error to permit the defendant’s personal physician to testify as to the competency of his patient. Clearly it was indelicate for a physician in attendance upon a patient to permit himself to be heard by another and go and make an examination of the patient for the purpose of testifying against him. In our judgment it was not only indelicate, but in violation of the privilege given to the patient under section 834 of the Code of Civil Procedure [a predecessor statute to CPLR 4504 (a)].” (Matter of Gates, 170 App Div 921.)
These conflicting cases were subsequently weighed against one another by the Supreme Court, New York County, in a matter in which appointment of a committee was sought with it concluding "the better view is found in Matter of Benson (supra).” (Matter of Allen [Maucelli], 24 Misc 2d 763, 764-765, appeal dismissed 13 AD2d 473.)
*1039 Matter of J. D. (107 Misc 2d 288) was a proceeding for the appointment of a conservator. Although the court acknowledged the determination in Matter of Allen (supra), it reached a different conclusion stating, in part: "If the law were to be that there was no privilege in this type of case, a chill would be cast over all medical treatment of persons who might consider themselves as potential subjects of an attempt by relatives or by others, to take control of their property. Public policy is clearly in favor of complete freedom of medical treatment and openness in communications between patient and doctor.” (107 Misc 2d, at 289.)
In Matter of Postley (125 Misc 2d 416) the Nassau County Surrogate recognized the conflict in the prior cases regarding the applicability of the physician-patient privilege in incompetency and conservatorship proceedings. The court, however, further analyzed the matter under review indicating: "the conservatorship record does not reveal that the decedent remained mute on the introduction of Dr. Vengos’ report, but countered with his own physicians’ reports supporting his position as to the lack of necessity for a conservator. Where the patient offers medical material otherwise privileged on his own behalf, he opens the door to the privileged material from other doctors such as Dr. Vengos who may have treated him * * * The conservatorship proceeding indicates an actual hearing held by the court, at which time it considered the opposing medical reports on the question of ordering its own examination. Accordingly, the privilege is held to have been waived by the decedent in the conservatorship proceeding. Once waived, the privilege is waived for ' "all time” ’, the statutory seal of secrecy having been broken”. (125 Misc 2d, at 417.)
More recently, in a proceeding commenced seeking the appointment of a committee, Justice Sebastian Leone, of the Supreme Court, Kings County, had occasion to observe: "a proceeding for a declaration of incompetency and for the appointment of a committee puts respondent’s mental condition into controversy. However, where a defendant has not affirmatively placed his or her medical condition in issue either by way of counterclaim or to excuse the conduct complained of by the plaintiff, he or she does not waive the physician-patient privilege and may object to the disclosure sought based on that privilege.” (Matter of Flowers [Bullens], 148 Misc 2d 166, 168.)
*1040 Thus, the various courts which have considered this issue plainly have inconsistent views and perspectives and it is clear that case law does not provide a definitive answer to the issue before the court.
One question not addressed in the foregoing cases, moreover, is whether a person ultimately determined to be lacking the requisite mental capacity to manage his or her own aifairs can meaningfully waive the physician-patient privilege even if his or her acts give the appearance of a waiver. In view of this concern it seems that to examine an alleged incapacitated person’s acts or purported intentions relative to waiver of the physician-patient privilege in a case-by-case analysis is a solution fraught with peril and fallibility since the alleged incapacitated person’s ability to make decisions is one of the very questions that is put in issue.
In view of the unsettled issues which remain in the wake of the inconsistent views expressed in the case law it is appropriate to return to the provisions of Mental Hygiene Law article 81 to ascertain what guidance may be found therein.
Section 81.07 (c) of the Mental Hygiene Law sets forth the legend which must be printed in large letters on each order to show cause employed to commence a Mental Hygiene Law article 81 proceeding. Part of the notice provided to the alleged incapacitated person is: "The court may give the court evaluator permission to inspect your medical, psychological, or psychiatric records. You have the right to tell the judge if you do not want the court evaluator to be given that permission.” (Mental Hygiene Law § 81.07 [c].)
The Law Revision Commission Comments to this section provide no additional insight on this point stating only: "The legend advises the person that a court evaluator will be appointed to conduct an investigation of the claims made in the petition, that the person has the right to object to the court evaluator’s inspection of his or her medical and psychiatric records”. (McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.07, 1994 Pocket Part, at 252.)
In directing what shall be included in a court evaluator’s report Mental Hygiene Law § 81.09 (c) (5) (vii) states: "how is the person alleged to be incapacitated functioning with respect to the activities of daily living and what is the prognosis and reversibility of any physical and mental disabilities, alcoholism or substance dependence? The response to this question shall be based on the evaluator’s own assessment of the *1041 person alleged to be incapacitated to the extent possible, and where necessary, on the examination of assessments by third parties, including records of medical, psychological and/or psychiatric examinations obtained pursuant to subdivision (d) of this section. As part of this review, the court evaluator shall consider the diagnostic and assessment procedures used to determine the prognosis and reversibility of any disability and the necessity, efficacy, and dose of each prescribed medication”. (Emphasis added.)
Section 81.09 (d) of the Mental Hygiene Law provides: "The court evaluator may apply to the court for permission to inspect records of medical, psychological and/or psychiatric examinations of the person alleged to be incapacitated; except as otherwise provided by federal or state law, if the court determines that such records are likely to contain information which will assist the court evaluator in completing his or her report to the court, the court may order the disclosure of such records to the court evaluator, notwithstanding the physician/ patient privilege as set forth in section four thousand five hundred four of the civil practice law and rules; if the court orders that such records be disclosed to the court evaluator, the court may, upon the court’s own motion, at the request of the court evaluator, or upon the application of counsel for the person alleged to be incapacitated, or the petitioner, also direct such further disclosure of such records as the court deems proper.”
The Law Revision Commission Comments to Mental Hygiene Law § 81.09 do not expand upon the issue stating the following: "Medical, psychological and psychiatric records of the allegedly incapacitated person are protected by the patient-physician privilege. The court evaluator may examine them only upon a finding by the court that the records are likely to contain information that will assist the court evaluator in completing the report to the court. The allegedly incapacitated person has the right to object to such inspection and is notified of his right in the notice of the proceeding (see section 81.07 (c)).” (McKinney’s Cons Laws of NY, Book 34A, 1994 Pocket Part, at 258.)
It is particularly noteworthy that although the above-quoted section 81.09 (d) of the Mental Hygiene Law states that the court may "direct such further disclosure of such records” as it deems proper, no definition of the word "disclosure” is provided. Thus, it is unclear whether "disclosure” in this context is an all-encompassing term to be construed in its *1042 broadest sense, enabling the court to permit the use of information at trial notwithstanding CPLR 4504 (a), or whether "disclosure” is intended to have the meaning of the word as employed in CPLR article 31, and thus be limited to prehearing informational purposes, and not include admissibility of the information at the hearing.
It is also worthy of note that Mental Hygiene Law article 81 recognizes that aside from medical records arguably subject to the physician-patient privilege, it is permissible to have the court authorize retention of an independent medical expert to provide evidence which may be required to determine a proceeding commenced thereunder. (See, Mental Hygiene Law § 81.09 [c] [7].) This is clearly a recognition that even though the alleged incapacitated person has not commenced the proceeding, such person’s mental abilities and medical condition are, nevertheless, the matters which are ineluctably in issue.
Nevertheless, Mental Hygiene Law article 81 does not squarely state whether medical, psychological or psychiatric evidence, which would otherwise be excluded by the physician-patient privilege, may be admitted into evidence and, if it may be admitted, under what circumstances admission should be allowed.
Although resolution of the issue is not free from doubt, from the above-discussed cases and the court’s review of Mental Hygiene Law article 81 the following conclusions are drawn.
In the first instance the physician-patient privilege plainly does apply in Mental Hygiene article 81 proceedings. (See, Mental Hygiene Law § 81.09 [d].) In most instances, therefore, it is probably improper for a petitioner to rely upon an examining or treating physician’s affidavit in support of an order to show cause and petition commencing a guardian proceeding.
If satisfied, however, that the alleged incapacitated person has knowingly and effectively put his or her medical condition in issue, the court may properly conclude that the privilege thereby has been waived.
The strategically safe response of an alleged incapacitated person seeking to challenge a petition and supporting medical proof claimed to be violative of the physician-patient privilege is to seek to have such violating medical proof stricken and to put a petitioner to his or her burden of proof without the benefit of such medical proof. By following this procedure the *1043 alleged incapacitated person will insure that the physician-patient privilege, unless for some other reason having been waived, will remain intact at least until that point in the proceeding in which the court evaluator may seek the court’s permission to review the alleged incapacitated person’s medical, psychological or psychiatric records. And, since the alleged incapacitated person must receive notice of such a request by the court evaluator there will be the opportunity to try to convince the court that the records in issue should not be disclosed, or that the extent of disclosure should be limited.
From that point there is some statutory ambiguity since even in the circumstance where the court has authorized the court evaluator to inspect medical, psychological or psychiatric records to prepare the court evaluator’s report, it is not clear that the statutory drafters intended that the records could become part of the evidentiary record.
Indicative of the lack of precise direction on this question is section 81.12 (b) of the Mental Hygiene Law which provides, in part: "The report of the court evaluator may be admitted in evidence if the court evaluator testifies and is subject to cross examination.” Thus, the granting of permission to the court evaluator to use otherwise privileged records to prepare his or her report does not necessarily mean that the records, or the report for that matter, will be introduced into evidence.
Taking into account the above-discussed decisions and statutory law and the conclusions the court has reached upon their review, therefore, one question to be considered herein is whether the alleged incapacitated person, Rose Goldfarb, had sufficient capacity to have waived the physician-patient privilege. Assuming such capacity, the privilege would be waived by her reliance on the report of consultation of Bruce Rosen, M.D., in support of her motion to dismiss the proceeding. Although the alleged incapacitated person, Rose Goldfarb, has argued that inclusion of Dr. Rosen’s report does not constitute a waiver because it was included only to show an inconsistency with Dr. Steinberg’s statements, the court nevertheless concludes that it was an affirmative act by which she put her mental condition in issue.
The court’s conclusion that Rose Goldfarb is chargeable with a waiver is supportable by the facts that Rose Goldfarb had sufficient capacity to retain counsel to oppose the petition, and that such motion has been made by counsel, who presumably has consulted his client as to the course to be taken in *1044 defense of the petition. At this stage of the proceeding, therefore, based on the actions of Rose Goldfarb, the physician-patient privilege presumptively has been waived. This assessment, however, could be subject to revision after all the evidence is considered.
Based upon the court’s next conclusion, however, the question of whether Rose Goldfarb has waived the privilege is not controlling in this case.
The court is persuaded that, irrespective of the alleged incapacitated person’s actions, intentions and capacity, the court may admit medical, psychological and psychiatric records and permit medical, psychological and psychiatric testimony in contravention of CPLR 4504 (a) under the authority of Mental Hygiene Law article 81. This conclusion is based on the express authority to allow disclosure of medical, psychological and psychiatric records to the court evaluator and to permit "such further disclosure of such records as the court deems proper.” (Mental Hygiene Law § 81.09 [d].) Since "disclosure” is permitted, the breach of secrecy of physician-patient records is authorized. To permit such records to be admitted into evidence is but a slight extension of the expressly authorized "disclosure” and any damage, injury or embarrassment which may have been incurred by the patient by such admission into evidence can be minimized by an order sealing the record, in whole or in part. (See, Mental Hygiene Law § 81.14 [b].)
Of course, whether to allow the disputed evidence remains a question for the court’s discretion. Here, because it appears that the court is likely to require medical, psychological or psychiatric evidence to make a determination in this vigorously contested proceeding, it is the court’s ruling that the testimony of Alan D. Steinberg, M.D. shall not be excluded pursuant to the physician-patient privilege, even assuming that he did not intend to examine Rose Goldfarb for litigation purposes and that she was not advised that she did not have to submit to his examination or answer any questions.
The hearing shall resume on April 28, 1994.