PEOPLE v HAMACHER

Docket No. 81202. Argued April 6, 1988 (Calendar No. 2). Decided
    March 30, 1989.

    Richard A. Hamacher was convicted by a jury in the Genesee
        Circuit Court, Donald R. Freeman, J., of second-degree criminal
        sexual conduct involving his eight-year-old stepdaughter. The
        Court of Appeals, T. M. BURNS and HOOD, JJ. (HOLBROOK, JR.,
        P.J., concurring in the result only), affirmed in an opinion per
        curiam, finding that testimony by the defendant's wife was
        properly admitted as an exception to the general spousal privi-
        lege because the prosecution concerned a crime committed
        against one spouse's child and was applicable to the communi-
        cation privilege and because the parties were in the process of
        divorce (Docket No. 80765). The Supreme Court vacated the
        judgment of the Court of Appeals and remanded the case for
        reconsideration, stating that § 2162 of the Revised Judicature
        Act provides no exceptions to the privilege regarding communi-
        cations between a husband and wife where the husband and
        wife are separated or are in the process of obtaining a divorce.
        On remand, the Court of Appeals, MAHER and HOOD, JJ.
        (HOLBROOK, JR., P.J., concurring in the result only), reversed in
        an opinion per curiam (Docket No. 99819). The people appeal.

        In an opinion by Justice LEVIN, joined by Justices BRICKLEY,
    CAVANAGH, and ARCHER, the Supreme Court *held:*

        In this case, the Court of Appeals correctly held that the
    spousal communication privilege barred the testimony of the
    defendant's wife.

        1. Section 2162 of the Revised Judicature Act provides two
    distinct privileges: the spousal privilege and the communication
    privilege. The spousal privilege, which is applicable only when
    the witness and the spouse are married at the time of trial,
    bars one spouse from testifying for or against the other without
    the other's consent, except in certain enumerated circum-

REFERENCES
Am Jur 2d, Witnesses §§ 148-171.
Effect, on competency to testify against spouse or on marital
    communication privilege, of separation or other marital instabil-
    ity short of absolute divorce. 98 ALR3d 1285.

stances. The communication privilege bars a spouse from testifying as to any communications made by one to the other during the marriage without the consent of the other. The communication privilege applies whether the testimony is sought during or after the marriage, as long as the communication occurred during the marriage. The act provides no exceptions with respect to the communication privilege. The evolution of § 2162 and its clear and unambiguous language indicate that the enumerated exceptions apply only to the general spousal privilege and not to the communication privilege.

2. The prosecutor's contentions that the defendant's failure to object to his wife's testimony at the preliminary examination precluded objection at trial, and alternatively that his wife was rendered unavailable as a witness when he invoked the communication privilege and therefore that her prior recorded testimony at the preliminary examination could have been read to the jury pursuant to MRE 804(b)(1), were raised for the first time in the Supreme Court and thus were not preserved for appeal.

Affirmed and remanded for a new trial.

Justice LEVIN, writing separately, stated that the Court's conclusion that the prosecutor failed to preserve either the waiver issue or an alternative claim for appeal makes it unnecessary for the Court to consider whether the failure of the defendant's lawyer to object to his wife's testimony at the preliminary examination precluded objection at trial. The dissent discusses case law concerning waiver of testimonial privileges, stating that the majority does not dispute the fact that the defendant waived the marital privilege at the preliminary examination.

While the communication privilege can be waived, a failure to object does not necessarily constitute a waiver which precludes assertion of a right or privilege at a new trial. Generally, where a new trial is ordered, the case is to be retried de novo as if it had not been tried before and without prejudice to either party. The parties start again from their pleadings, and evidentiary objections that were not voiced at an earlier trial may be asserted anew unless the other side would be prejudiced thereby. The failure to object to the introduction of testimony on the ground of privilege does not waive the right to make such objection at a subsequent proceeding where the adversary had not been misled by the failure to object.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, dissenting, stated:

Preservation of marital harmony becomes mere rubric where

one spouse is willing to testify against another under the circumstances described in the statute. Worse, it is a cruel and demeaning fiction, justified by no purpose other than to promote the interest of the adverse spouse and having no effect save to obstruct the fact-finding process. MCL 600.2162; MSA 27A.2162 should be construed so as to find the communication privilege inapplicable to the exceptions enumerated in the statute in which the Legislature has determined that protection of marital privacy is a less important societal interest than the right to testify fully as to a violation of civil or criminal rights.

The term "marital privilege" refers to two distinct privileges: the right of one spouse to bar testimony by the other, and the right of one spouse to prevent revelation of confidential communications by the other. The justification for the communication privilege is to protect marital harmony and encourage marital communication. Each exception in the statute represents an instance where the Legislature has balanced the interest in marital harmony against a competing and overriding interest in fully vindicating the witness or party spouse's rights. Criticism of both privileges has centered on their conflict with the jurisprudential objective of advancing the finding of truth. Rather than assuming that the Legislature chose to permit one spouse to completely silence the other to uphold the integrity of marital confidences, it should be recognized that in certain instances, such as civil cases in which the spouses are adversaries, cases involving harm to a child of either or both, or cases in which a personal wrong or injury is done by one spouse to another, the privilege must yield to the need for probative evidence in order to vindicate the rights in controversy.

In this case even if the exceptions were to be found not to apply to the confidential communication privilege, the defendant waived the privilege by failing to object to his wife's testimony at his preliminary examination. Waiver of the communication privilege, express or implied, has long been recognized. Once waived, a privilege may not be reasserted by a defendant at a later stage of the same proceeding or at any subsequent judicial proceeding. Thus, a failure by the holder to assert the privilege by objection at the preliminary examination in the same case is a waiver of the privilege. Likewise, even if it was error to admit the defendant's wife's testimony, her testimony at the preliminary examination, to which defendant failed to object, should be received under MRE 804(b)(1) as testimony of an unavailable witness because of the defendant's assertion of the spousal privilege.

160 Mich App 759; 408 NW2d 549 (1987) affirmed.

1. Witnesses — Husband and Wife — Spousal Privilege.
    The spousal privilege, which is applicable only when the witness
        and the spouse are married at the time of trial, bars one spouse
        from testifying for or against the other without the other's
        consent, except in actions for divorce, prosecutions for bigamy
        or for a crime committed against the children of either or both,
        actions growing out of a personal wrong or injury done by one
        to the other or the refusal or neglect to furnish the spouse or
        children with suitable support, cases of desertion or abandon-
        ment, and certain cases relating to the marriage and title to
        property (MCL 600.2162; MSA 27A.2162).

2. Witnesses — Husband and Wife — Communication Privilege —
    Spousal Privilege.
    The communication privilege under the Revised Judicature Act
        bars a spouse from testifying as to any communications made
        by one spouse to the other during the marriage without the
        consent of the other spouse regardless of whether the testimony
        is sought during or after the marriage as long as the communi-
        cation occurred during the marriage; exceptions enumerated in
        the act with respect to the spousal privilege do not apply to the
        communication privilege (MCL 600.2162; MSA 27A.2162).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Robert E. Weiss,* Prose-
cuting Attorney, *Donald A. Kuebler,* Chief, Appel-
late Division, and *Edwin R. Brown,* Assistant Pros-
ecuting Attorney, for the people.

*Bennett S. Engelman* for the defendant.

Levin, J. We granted leave to appeal in this
case, consolidated on appeal with *People v Ver-
meulen,* 432 Mich 32; 438 NW2d 36 (1989), to
consider the application of the spousal communica-
tion privilege set forth in § 2162 of the Revised
Judicature Act.[1] We conclude that the Court of
Appeals correctly held that the privilege bars the

---

[1] A husband shall *not be examined* as a witness for or against
his wife without her consent; nor a wife for or against her
husband without his consent, except in suits for divorce and in
cases of prosecution of bigamy, in cases of prosecution for a
crime committed against the children of either or both, and
where the cause of action grows out of a personal wrong or

testimony of the defendant's wife in this case and affirm the decision of the Court of Appeals.

I

Section 2162 of the RJA provides two distinct privileges. The first, the spousal privilege, is only applicable when the witness and the spouse are married at the time of trial. This privilege bars one spouse from testifying for or against the other without the other's consent except in (1) actions for divorce, (2) prosecutions for bigamy or for a crime committed against the children of either or both, (3) actions growing out of a personal wrong or injury done by one to the other or the refusal or neglect to furnish the spouse or children with suitable support, (4) cases of desertion or abandonment, and (5) certain cases relating to marriage and title to property.

injury done by one to the other, or grows out of the refusal or neglect to furnish the wife or children with suitable support, and except in cases of desertion or abandonment, and cases arising under section 6 of chapter 83 of the Revised Statutes of 1846, as amended, relating to marriage, and cases where the husband or wife shall be a party to the record in a suit, action, or proceeding, where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property derived from, through or under the husband or wife so called or offered as a witness, shall be the subject matter in controversy or litigation in such suit, action or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify. [MCL 600.2162; MSA 27A.2162.]

The second privilege, the communication privilege, bars one spouse from testifying "as to any communications made by one to the other during the marriage" without the consent of the other. The communication privilege applies whether the testimony is sought "during the marriage *or afterwards,*" as long as the communication occurred during the marriage. Section 2162 of the RJA states no exceptions with respect to the communication privilege.

II

Hamacher was convicted of second-degree criminal sexual conduct with his stepdaughter who was eight years old at the time of the alleged acts. At trial, the court denied his motion to suppress testimony by his wife concerning statements Hamacher allegedly made regarding his conduct with his stepdaughter.[2] The Court of Appeals initially affirmed Hamacher's conviction. It ruled that the wife's testimony was properly admitted because the Legislature intended that the exception to the general spousal privilege for prosecutions concerning crimes committed against either spouse's children be applicable to the communication privilege and because the defendant and his wife were "in the process of divorce at the time of trial" and therefore "strict adherence to the rule would not further its purpose of fostering the marital relationship."[3]

This Court vacated the judgment of the Court of

---

[2] The following testimony of Hamacher's wife is challenged:

(1) "And he said the reason that he had done it was because I didn't lay on the couch with him any more and watch TV and cuddle up to him, and Jeannie, Jeannie would do that."

(2) An affirmation of the same testimony.

(3) "I told her (defendant's sister) that he had admitted it."

[3] *People v Hamacher,* 150 Mich App 671, 675; 389 NW2d 477 (1986).

Appeals and remanded the cause to it for reconsideration, stating that § 2162 of the RJA "contains no exception to the privilege regarding communications between a husband and wife where the husband and wife are separated or are in the process of obtaining a divorce. The defendant and his wife remained husband and wife at the time the communication in question was allegedly made."[4]

On remand, the Court of Appeals held that "the admission of defendant's wife's statements in the instant case is in contravention of the confidential communication privilege," stating that "the statute makes no exception for divorced or separated couples."[5]

On appeal in this Court, the prosecutor contends that (a) the statutory exceptions applicable to the spousal privilege apply or should be made applicable by this Court to the communication privilege, and (b) Hamacher waived his right to object to the admission of his wife's testimony at trial because he failed to object to her testimony at the preliminary examination.

### III

When the statutory privileges that are now codified in § 2162 of the RJA were originally enacted in 1861, there were no exceptions.[6] The general spousal privilege, the communication privilege, and an adultery "preclusion" were clearly separated by semicolons:

A husband shall not be examined as a witness for or against his wife, without her consent, nor a

---

[4] *People v Hamacher*, 428 Mich 884; 402 NW2d 484 (1987).

[5] *People v Hamacher (On Remand)*, 160 Mich App 759, 763; 408 NW2d 549 (1987).

[6] There had been an earlier version of the spousal privilege, phrased quite differently. 1846 RS, ch 102, § 99; 1857 CL 4339.

wife for or against her husband, without his consent; nor shall either, during the marriage or afterwards, be, without the consent of both, examined as to any communication made by one to the other during the marriage; but in any action or proceedings instituted by the husband or wife in consequence of adultery, the husband and wife shall not be competent to testify. [1861 PA 125.]

When the exceptions were added,[7] they were set

[7] 1869 PA 84 added the exception for certain actions regarding title to property:

A husband shall not be examined as a witness, for or against his wife, without her consent; nor a wife, for or against her husband, without his consent, except in cases where the husband or wife shall be a party to the record, in a suit, action, or proceeding where the title to the separate property of the husband or wife, so called or offered as a witness, or where the title to property derived from, through, or under the husband or wife so called or offered as a witness, shall be the subject matter in controversy or litigation, in such suit, action, or proceeding, in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto, without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist; nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other, during the marriage; but in any action or proceeding instituted by the husband or wife, in consequence of adultery, the husband and wife shall not be competent to testify.

1885 PA 211 added the exceptions for personal wrongs or injuries or refusal to provide support:

A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in cases where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the refusal or neglect to furnish the wife or children with suitable support within the meaning of act number one hundred and thirty-six of the session laws of eighteen hundred and eighty-three, and except in cases where the husband or wife shall be a party to the record in a suit,

forth immediately following the general spousal privilege. When the exception for bigamy prosecutions was added as a separate section, the Legislature expressly provided that this exception did not apply to the communication privilege:

> That a husband may testify for or against his wife without her consent, and a wife may testify for or against her husband without his consent, in all criminal prosecutions, for bigamy: Provided, however, That nothing herein contained shall be so construed as to permit a husband or wife to testify against the other without the consent of both concerning any communications made by one to the other during the marriage.[8]

The Judicature Act of 1915[9] added an exception for divorce cases following the general spousal privilege and included the bigamy exception in that portion of the statute. At the same time, the punctuation was revised and the language of the marital privilege took its present form. An exception to the general spousal privilege for the prosecution of crimes against the children of one or both spouses was added in 1939.[10]

The evolution of § 2162 of the RJA and its clear and unambiguous language indicate that the enumerated exceptions apply only to the general

action, or proceeding, where the title to the separate property of the husband or wife . . . .

[8] 1897 PA 212.

[9] 1915 PA 314, ch XVII, § 67.

[10] A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and where the cause of action grows out of a personal wrong or injury done by one to the other . . . . [1939 PA 82.]

spousal privilege and not to the communication privilege. The Legislature has frequently amended the statute when it was deemed necessary. "Privileges are governed by common law, except as modified by statute or court rule. MRE 501. Since there is no court rule governing marital privileges, the statute controls." *People v Love,* 425 Mich 691, 699; 391 NW2d 738 (1986) (opinion of CAVANAGH, J.).

We have considered *Hunt v Eaton,* 55 Mich 362, 366; 21 NW 429 (1884), discussed in the dissenting opinion,[11] where this Court mentioned a number of considerations in concluding that the communication privilege "includes every communication between [husband and wife] other than such as involves the title to the separate property of either when it becomes necessary to resort to litigation to obtain, secure or protect the rights of either to such separate property."

In *Vermeulen, supra,* p 39, this Court said that "only confidential communications are protected by the communication privilege," and that "the nature and circumstances of the communication may be considered in determining whether the communication was confidential."

It has been said that among the factors that "may serve to rebut a claim that confidentiality was intended"[12] is "that the communication relates to business transactions," such as "business agreements between the spouses, or about business matters transacted by one spouse as agent for the other, or about property or conveyances."[13] Professor McCormick explained that "[u]sually such

[11] *People v Sebring,* 66 Mich 705; 33 NW 808 (1887), also discussed in the dissenting opinion, concerned the spousal privilege and not the communication privilege.

[12] McCormick, Evidence (3d ed), § 80, p 193.

[13] *Id.,* pp 194-195.

statements relate to facts which are intended later to become publicly known."[14]

In *Hagerman v Wigent,* 108 Mich 192, 194; 65 NW 756 (1896), this Court anticipated McCormick's rationale when it based its holding, that a husband could testify that his wife had delivered a mortgage to him with instructions to deliver it after her death to her nephews, who were the mortgagors, on its assessment that the circumstances "involved an expectation on her part that the communication would be disclosed," and therefore it "cannot be said to have been confidential."[15]

Implicit in the assumption of a legal obligation to repay is the intent that either party to the transaction may testify concerning communications relating to the transaction should the lending spouse commence an action to enforce the legal obligation that arose when money was borrowed.

The statement Hamacher allegedly made to his wife did not concern a transaction "intended later to become publicly known."

## IV

The prosecutor contends that Hamacher's failure to object to his wife's testimony at the preliminary examination precluded objection at the trial. The prosecutor contends alternatively that Hamacher's wife was rendered "unavailable" when he invoked the communication privilege,[16] and,

---

[14] *Id.,* p 195; McCormick, Evidence (1st ed), § 84, p 173.

[15] In *In re Doty Estate,* 212 Mich 346, 352; 180 NW 608 (1920), the Court adverted to *Hunt v Eaton, supra,* in its discussion of the development of the case law identifying those communications that are and are not confidential.

[16] MRE 804(a)(1) provides:

"Unavailability as witness" includes situations in which the declarant—

therefore, her prior recorded testimony at the preliminary examination could have been read to the jury pursuant to MRE 804(b)(1).[17]

The prosecutor did not raise the waiver issue or his alternative claim until he filed his brief in this Court. He thus failed to preserve either the waiver issue or his alternative claim for appeal.[18]

---

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement . . . .

[17] This argument finds support in a passage in *People v Love, supra,* p 708 (opinion of CAVANAGH, J.), but we observe that MRE 804(b)(1) by it terms applies to a hearsay objection:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

[18] The prosecutor did not raise the waiver issue in the trial court when Hamacher's lawyer, assigned on a finding of indigency to replace the lawyer who represented him at the preliminary examination, objected at the trial to the wife's testimony concerning the communication. The prosecutor persuaded the judge to allow the wife to testify on grounds other than waiver.

Nor did the prosecutor alternatively raise the waiver issue in response to Hamacher's arguments in his brief filed with the Court of Appeals on appeal from his conviction.

The prosecutor had a further opportunity to raise the issue when Hamacher, after the Court of Appeals initially affirmed his conviction, filed an application for leave to appeal with this Court and still a further opportunity when Hamacher filed a petition for reconsideration after this Court denied leave to appeal, 426 Mich 867 (1986). He did not do so.

We granted reconsideration, and, as previously noted, vacated the judgment of the Court of Appeals, and remanded to the Court of Appeals for further consideration. Although we said in so doing that § 2162 of the RJA contained no exception to the communication privilege where a husband and wife were separated or in the process of obtaining a divorce—one of the predicates of the trial judge's ruling overruling Hamacher's objection at trial to his wife's testimony—the

V

We conclude that the Court of Appeals correctly held that the wife's testimony was inadmissible. We affirm the judgment of the Court of Appeals and remand the cause to the trial court for a new trial.

BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with LEVIN, J.

LEVIN, J. (*separate opinion*). The Court's conclusion that the prosecutor failed to preserve either the waiver issue or his alternative claim for appeal makes it unnecessary for the Court to consider whether the failure of Hamacher's lawyer to object to his wife's testimony at the preliminary examination precluded objection at the trial.

The dissenting opinion discusses case law concerning waiver of testimonial privileges, and "conclude[s] that the defendant's failure to assert the spousal privilege at that examination operated as a general waiver of the privilege."[1]

The dissenting opinion states that the confidential communication privilege can be waived, and I

---

prosecutor did not raise the waiver issue in his brief filed on remand to the Court of Appeals.

After the Court of Appeals on remand reversed Hamacher's conviction, the prosecutor filed an application for leave to appeal with this Court which, again, did not raise the waiver issue. This Court's order granting leave to appeal did not limit the issues, and the prosecutor raised the waiver issue for the first time in his brief in this Court.

Hamacher's lawyer did not respond in his brief in this Court to the waiver issue. During oral argument, one of the justices asked Hamacher's lawyer whether he had a response. Hamacher's lawyer said that the prosecutor had raised the issue for the first time on appeal.

[1] *Post*, p 193.

agree.[2] A failure to object does not, however, necessarily constitute a waiver[3] precluding assertion of a right or privilege at a "new trial." If it were otherwise, the general rule would not be that a failure to object does not ordinarily bar objection at a new trial.[4]

I

The general rule is that upon a new trial[5] the case is to be retried de novo "as if it had not been

[2] The Court of Appeals has held that a defendant's lawyer's failure to raise the spousal and communication privileges issues constitutes ineffective assistance of counsel. *People v Stubli,* 163 Mich App 376, 379; 413 NW2d 804 (1987), where defendant's lawyer failed to assert the privileges at the trial. Similarly, see *People v Armentero,* 148 Mich App 120, 124; 384 NW2d 98 (1986), where on remand from the Court of Appeals for an evidentiary hearing the trial court found that the failure to assert the "marital privilege" at the preliminary examination constituted ineffective assistance of counsel requiring a new trial.

The same standards regarding ineffective assistance of counsel apply to retained counsel. See *Cuyler v Sullivan,* 446 US 335, 344-345; 100 S Ct 1708; 64 L Ed 2d 333 (1980).

[3] While the term "waiver" is sometimes used by courts as shorthand to describe a failure to object, a true waiver, binding a party at a "new trial," is an *intentional and voluntary relinquishment of a known right or privilege.*

See in general 92 CJS, Waiver, pp 104 ff.; *Kelly v Allegan Circuit Judge,* 382 Mich 425, 427; 169 NW2d 916 (1969); *Maxey v Proctor,* 343 Mich 453, 457; 72 NW2d 198 (1955); *Krakowsky v Margolis,* 255 Mich 3, 6; 237 NW 28 (1931); *Dow Chemical Co v Detroit Chemical Works,* 208 Mich 157, 172; 175 NW 269 (1919); *Couper v Metropolitan Life Ins Co,* 250 Mich 540; 230 NW 929 (1930); *Book Furniture Co v Chance,* 352 Mich 521, 526-527; 90 NW2d 651 (1958).

[4] See ns 6-7 and accompanying text.

[5] Since whatever rule might be stated in the instant case regarding the waiver of testimonial privileges would surely be applicable at a new trial following reversal on appeal, the precedents developed in the new trial context are relevant although in the instant case the question arises on appeal from the first trial and the failure to object occurred at the preliminary examination.

The record at the preliminary examination does not become any part of the trial record except to the extent it is introduced in evidence as where a witness is unavailable at the trial and the witness' testimony is not subject to evidentiary objection other than the hearsay objection obviated by MRE 804(b)(1).

tried before and without prejudice to either party";
when a "new trial was ordered, the parties started
again from their pleadings."[6] Evidentiary objec-
tions that were not voiced at an earlier trial, may
be asserted at a new trial unless the other side
would be prejudiced thereby.[7]

The dissenting opinion asserts that the general
rule is inapplicable to a failure to object to privi-
leged testimony because the "confidential commu-
nication privilege acts to hold inviolate the privacy
of the marital relationship. When facts which
might otherwise be privileged are disclosed for all
to inspect, the purpose of the privilege is de-
stroyed. Just as one cannot unring a bell, a secret

---

[6] *Kruk v Minnesota, St P & S S M R Co,* 249 Mich 685, 688; 229 NW
479 (1930) (the plaintiff was not estopped by the position taken at a
former trial from pleading a cause of action under a preëmptive
federal statute held in the first appeal to have barred his claim based
on a state statute); *Bathke v Traverse City,* 308 Mich 1, 5; 13 NW2d
184 (1944); *Vukich v Detroit,* 325 Mich 644, 648; 39 NW2d 212 (1949).
See, generally, 6 Michigan Pleading & Practice, §§ 41.40, 41.41, pp
582-584; 18 Michigan Law & Practice, § 6, pp 142-143.

See also *Bowerman v Detroit Free Press,* 287 Mich 443, 449; 283
NW 642 (1939) (the plaintiff had not been permitted "to take a
position inconsistent with that assumed by her on the first trial"); but
see *Hassberger v General Bldrs' Supply Co,* 213 Mich 489, 496; 182
NW 27 (1921) (the position taken in the first trial was a judicial
admission estopping the party from taking an inconsistent position at
the second trial).

[7] Prejudice may be found where the witness is unavailable for the
second trial and the basis of objection could have been obviated had it
been voiced at the earlier trial.

See, generally, 29 Am Jur 2d, Evidence, § 742, p 812; McCormick,
Evidence (3d ed), § 259, p 770. See *Petrie v Columbia & G R Co,* 29 SC
303, 317; 7 SE 515 (1888) (because a new trial is "a trial de novo, and
is conducted just as if there had been no previous trial," the testi-
mony and other evidence offered anew, "when it is so offered it
necessarily becomes subject to any legal exception which may be
taken to it"); *Clark v Ross,* 328 SE2d 91, 99 (SC App, 1985); *Morrison
v Lowe,* 274 Ark 358, 361-362; 625 SW2d 452 (1981); *Calley v Boston
& M R Co,* 93 NH 359, 362-363; 42 A2d 329 (1945); *Aetna Ins Co v
Koonce,* 233 Ala 265, 268-269; 171 So 269 (1936); *State v Fredette,* 462
A2d 17, 25-26 (Me, 1983). See also *State v Jaques,* 256 NW2d 559, 563
(SD, 1977).

once disclosed in open court is never again a wholly private matter."[8]

## II

The dissenting opinion dismisses in a footnote this Court's decision in *Briesenmeister v Knights of Pythias,* 81 Mich 525; 45 NW 977 (1890), stating that *Briesenmeister* relied on a decision of the New York Court of Appeals that had already been overruled by a later decision of the New York Court of Appeals.[9]

In *Briesenmeister, supra,* p 534, the trial court had granted the plaintiff's motion to strike a physician's testimony on the basis of the physician-patient privilege. Some of the stricken testimony was not privileged, and this Court ordered a new trial. Although the plaintiff's motion to strike came after the completion of the physician's testimony and this Court acknowledged that the privilege must be claimed "before the testimony is admitted, or it ceases to be a privilege, and is *waived,* where no objection is made to the introduction of the testimony" (emphasis supplied), it nevertheless ruled that, at the new trial it had ordered, the plaintiff could again assert the privilege.

The Court disagreed with the rationale of the later decision of the New York Court of Appeals, *McKinney v Grand Street, PP & F R Co,* 104 NY 352; 10 NE 544 (1887). In *McKinney,* the court said that where there is a failure to object at a trial and the confidential communication is published in

[8] *Post,* p 194.

The dissenting opinion relies on statements in *State v Clark,* 296 NW2d 372, 373 (Minn, 1980).

[9] The decisions referred to are *Grattan v Metropolitan Life Ins Co,* 92 NY 274; 44 AR 372 (1883), and *McKinney v Grand Street, PP & F R Co,* 104 NY 352; 10 NE 544 (1887), discussed below.

court, " 'no further injury can be inflicted upon the rights and interests which the statute was intended to protect, and there is no further reason for its enforcement.' " *Briesenmeister, supra,* p 535, quoting from *McKinney.*[10]

The Court responded that the "argument loses sight of one of the rights conferred by the statute. Privilege includes both the security against publication, *and the right to control the introduction in evidence,* of such information or knowledge communicated to or possessed by the physician."[11] (Emphasis added.) The Court continued:

> *The latter right exists although the former has ceased to be of any benefit. The public may know; but shall the jury be permitted to receive and weigh testimony derived from a source which the law has put the seal of silence upon,* unless released by the party who alone has the right to say whether that particular witness shall be the medium of conveying such knowledge to the jury? For instance, the party may have disclosed to a third person all that he has to his physician. Now, *while his admissions may be proved in a proper manner by such third person, they cannot be proved by the physician against the objection of the party.*[12] [Emphasis added.]

The court concluded that an earlier New York case, *Grattan v Metropolitan Life Ins Co,* 92 NY 274; 44 AR 372 (1883), "lays down the better rule."[13]

The Supreme Court of Iowa reached the same conclusion in *Burgess v Sims Drug Co,* 114 Iowa

[10] 104 NY 355.

[11] *Briesenmeister, supra,* p 535.

[12] *Id.*

[13] *Briesenmeister, supra,* p 536. The Court decided the question on the basis that *McKinney* had indeed overruled *Grattan* sub silentio. The Court, in *Briesenmeister,* was thus fully aware of *McKinney.*

275; 86 NW 307 (1901), citing *Briesenmeister* and *Grattan* approvingly. The court said that it did not agree with the reasoning in *McKinney*.

The Supreme Court of Arkansas similarly concluded, citing the "well considered opinions" in *Briesenmeister* and *Burgess,* that the failure at one trial to object to the introduction of testimony on the ground of privilege did not waive the right to make such objection at a subsequent trial of the same case where the adversary had not been misled by the failure to object. *Maryland Casualty Co v Maloney,* 119 Ark 434, 441; 178 SW 387 (1915).

The Court of Appeals has similarly read *Briesenmeister* as recognizing "the dual nature of the [physician-patient] privilege conferred," securing both " 'against publication, and the right to control the introduction in evidence . . . .' "[14]

### III

In *State v Clark,* 296 NW2d 372 (Minn, 1980), relied on in the dissenting opinion, the Minnesota Supreme Court stated its conclusion without any discussion of *McKinney, Grattan, Briesenmeister, Burgess, Maryland Casualty,* or any other case discussing the issue there decided,[15] with a "cf."

[14] *Beasley v Grand Trunk W R Co,* 90 Mich App 576, 597; 282 NW2d 401 (1979). Similarly, see *Seaton v State Farm Life Ins Co,* 99 Mich App 587, 590; 299 NW2d 6 (1980).

[15] The court cited a section of *Wigmore on Evidence* that does not advert to the issue decided, a Minnesota law review article, and a decision of the United States Supreme Court concerning the spousal, not the communication, privilege.

*Cerro Gordo Charity v Fireman's Fund American Life Ins,* 819 F2d 1471 (CA 8, 1987), construed Minnesota law and quite understandably followed *Clark.* In *State v Bishop,* 187 NJ Super 187; 453 A2d 1365 (1982), the defendant took the stand thereby waiving his Fifth Amendment privilege. *State v Mincey,* 141 Ariz 425, 439; 687 P2d 1180 (1984), relied on *Bishop* without recognizing the difference between a mere failure to object and affirmative use of testimony at an earlier trial.

citation of *Fraser v United States,* 145 F2d 139,
145 (CA 6, 1944), where the court similarly an-
nounced its conclusion without any consideration
of the prior case law and indeed without any
citation of authority whatsoever.[16] The current
authors of *McCormick on Evidence* write that the
conclusion stated in *Fraser* "seems questionable."[17]

*McKinney* and *Grattan* are readily reconciled:
In *McKinney,* the person claiming the privilege
had called the physician as a witness at an earlier
trial and thus had affirmatively waived the privi-
lege, while in *Grattan* there was no evidence that
the person asserting the privilege had called the
physician at an earlier trial.[18]

---

[16] This was but one of several alternative bases of decision stated by
the court in concluding that the defendants should prevail in an
equitable action concerning the right to money that had been depos-
ited in court.

[17] McCormick, Evidence (3d ed), § 83, p 198, n 5.

[18] The Supreme Court of Iowa, in *Kelley v Andrews,* 102 Iowa 119,
122; 71 NW 251 (1897), distinguished *McKinney* on this basis noting
that "[i]n that case, the party having the right to object introduced
the privileged evidence. In this case it was by the other party."

The dissenting opinion cites four other New York decisions.

In *General American Life Ins Co v Ettinger,* 266 AD 876; 42 NYS2d
836 (1943), the court, in a half-page, four-paragraph opinion, stated
that the person asserting the privilege had in a separate action
*instituted by her* against another insurance company waived the
privilege, and declared that such waiver operated also as a waiver in
the instant action by an insurance company seeking to rescind
another policy of insurance.

In *In re Postley,* 125 Misc 2d 416; 479 NYS2d 464 (1984), it was
held that where the person asserting the privilege had submitted a
statement signed by the physician in a proceeding to have a conserva-
tor appointed, the physician-patient privilege was waived and could
not be asserted in a later-contested probate proceeding that included
claims seeking to set aside inter vivos transactions.

In *People v Lowe,* 96 Misc 2d 33; 408 NYS2d 873 (1978), the judge
ordered discovery of the complainant's medical records and a psychi-
atric examination of the complainant stating that the complainant
had voluntarily stated and thereby waived further inquiry into his
mental condition when he testified that he suffered some brain
damage which impaired his thinking and communication abilities.
The court relied on a decision of the New York Court of Appeals that
where a patient in a personal injury action tenders the issue of his

In *People v Toner*, 217 Mich 640, 644; 187 NW 386 (1922), also cited in the dissenting opinion, *post*, p 193, this Court similarly declared that "[w]hen defendant called his wife as a witness he thereby waived his privilege."[19]

In the physician-patient privilege context, the patient generally needs medical testimony to support his claims in an action that he generally has commenced. The physician-patient privilege has been limited by case law and statute in New York and by statute and court rule in this state.[20]

---

physical condition to the jury, he waives the physician-patient privilege which otherwise would exist. *Hethier v Johns*, 233 NY 370; 135 NE 603 (1922). Similarly, see *People v Al-Kanani*, 33 NY2d 260; 307 NE2d 43 (1973); *People v Wilkins*, 101 AD2d 957; 477 NYS2d 706 (1984).

In *People v Bloom*, 193 NY 1, 10; 85 NE 824 (1908), the plaintiff had brought an action against the Metropolitan Street Railway Company to recover damages and permitted four physicians who had examined him and who had been called by the defendant to testify without objection. The later trial was for the offense of perjury allegedly committed by the plaintiff in the personal injury action. The court said that Bloom "intentionally" permitted the physicians to testify: "After *intentionally* permitting its publication"; "but he *intentionally* surrendered it." An intentional relinquishment of a known right is a waiver.

[19] The dissenting opinion cites two other decisions of this Court. *Benson v Morgan*, 50 Mich 77; 14 NW 705 (1883), held only that the holder of the privilege could not complain on direct appeal because he had not preserved the issue by timely objection. *Briesenmeister* could be cited for the same proposition of law. (See text following n 9.)

In *O'Toole v Ohio German Fire Ins Co*, 159 Mich 187, 192; 123 NW 795 (1909), the Court concluded that letters from the communicating spouse were admissible on the basis of a finding that the husband to whom the letters had been entrusted had not affirmatively delivered them to the third party. The Court said that the letters had "escaped" from the husband's clothing and were found on the floor and that there was no collusion between the husband and the person who found them. It has been suggested that the communicating spouse assumes the risk of loss or misdelivery of a writing as distinguished from disclosure due to the betrayal or connivance of the spouse to whom delivered. McCormick, Evidence (2d ed), § 82, p 168; (3d ed), § 82, p 197.

In neither *Toner, Benson,* nor *O'Toole* was there any issue whether an objection could be asserted in a later case, trial or proceeding.

[20] The rule recommended by the commissioners on Uniform State Laws would provide that there is no physician-patient privilege as to

IV

Section 2162 of the Revised Judicature Act does not purport to bar a spouse from disclosing a confidential communication. Hamacher's wife, without violating § 2162, related the statement she attributed to her husband to social service workers, police officers, the prosecutor, and could have done so to newspaper and other reporters. She could indeed have gone on the nightly news and made a full statement of the confidential communication without violating § 2162. The "secret" would then no longer have been secret and "never again a wholly private matter." Nevertheless, there can be no doubt that despite the wide communication to the world at large of the "secret," Hamacher's wife could not, consistent with § 2162, "be examined" in court with regard to the communication.

---

a communication relevant to an issue concerning the condition of the patient in any proceeding in which he relies on the condition as an element of his claim or defense. Uniform Rules of Evidence, Rule 503, 13A ULA 277-278.

The Michigan statute now provides a more limited waiver than the statute considered in *Briesenmeister.* The statute now provides that where the patient brings an action to recover for personal injuries or for malpractice, he shall be deemed to have waived the privilege for all physicians who have treated him if he produces any physician as a witness in his own behalf who has treated him. MCL 600.2157; MSA 27A.2157. See, generally, 5 Michigan Pleading & Practice (2d ed), § 37.117, p 440. See also 9 Michigan Pleading & Practice (2d ed), § 65.108, p 457, concerning a provision of the automobile no-fault act.

See also Martin, Dean & Webster, Michigan Court Rule Practice, p 384, discussing MCR 2.314(B)(2), providing that a party generally may not present or introduce evidence relating to his medical history or mental or physical condition if he asserts that that medical information is subject to a privilege and the assertion has the effect of preventing discovery of discoverable medical information.

The New York Court of Appeals, in construing its statute, had held after *Hethier v Johns,* n 18 *supra,* was decided, that the insured, by calling a treating physician, had waived the privilege as to other treating physicians. *Steinberg v New York Life Ins Co,* 263 NY 45; 188 NE 152 (1933).

V

Professor Wigmore propounded the so-called utilitarian justification for the testimonial privileges: "public policy requires the encouragement of the communications without which these relationships cannot be effective."[21] Professor McCormick disagreed.[22]

In the current revision of Professor McCormick's work, the privacy rationale set forth in the dissenting opinion is advanced, and at the same time it is acknowledged that it is unlikely this rationale was in the legislative mind when the privilege was enacted.[23] The authors also acknowledge they hope that adoption of the privacy rationale will result in the ultimate abolition of the communication privilege.[24]

The "privacy of the marital relationship" rationale might appropriately be assessed by the Legislature, were it to consider revising RJA § 2162, or by this Court, were it to take upon itself the task of reshaping the testimonial privileges in the exercise of its rule-making power concerning practice and procedure.[25] Upon such consideration, the Legislature or this Court might conclude that the "logical

---

[21] McCormick, Evidence (3d ed), § 72, p 171.

[22] Probably the policy of encouraging confidences is not the prime influence in creating and maintaining the privilege. It is really a much more natural and less devious matter. It is a matter of emotion and sentiment. All of us have a feeling of indelicacy and want of decorum in prying into the secrets of husband and wife. [McCormick, Evidence (1st ed), § 90, p 179.]

[23] Given its comparatively recent origin, this latter rationale probably has not operated as a conscious basis for either the judicial or legislative creation of existing privileges. Today's judicial tendency to pour new wine into old bottles, however, may serve to make the nonutilitarian theory *a factor in the* subsequent development of thinking about privilege. [McCormick, Evidence (3d ed), § 72, p 172. Emphasis added.]

[24] McCormick, Evidence (3d ed), § 86, pp 202-203.

[25] Const 1963, art 6, § 5.

implications"[26] of adoption of the privacy rationale
are incompatible with the societal goals sought to
be fostered by the communication privilege, espe-
cially if the ultimate logical implication is the
abolition altogether of the communication privi-
lege.

The Legislature or this Court might, upon such
a reassessment, also conclude that to adopt main-
tenance of secrecy as a rationale for the marital
communication or other testimonial privileges
could unnecessarily enlarge the scope of the privi-
leges and encourage litigation—unnecessarily en-
large because a literal reading of the communica-
tion privilege, as barring a spouse from "be[ing]
examined" in court regarding the communication,
is quite adequate and therefore the language ex-
pressing the privilege does not need tinkering.

In all events, the courts should not, as long as
they purport to be expounding a *statutory* privi-
lege, adopt rationales that cannot be found upon
reference to the legislative history of the privilege,
propounded by acknowledged revisionists—
whether they be respected scholars like Professors
Wigmore and McCormick, their current successors,
or other advocates—that might provide a juridical
basis for accomplishing by judicial decision, "pour-
[ing] new wine into old bottles,"[27] that which nei-
ther the Legislature nor this Court has been will-
ing to undertake, the unraveling of the communi-
cation privilege ad hoc and ad hominem.

The courts have no basis for declaring that the
statutory purpose in 1861 was to protect the se-
crecy of the communication when the statute itself
clearly does not purport to do so. There is no basis
for concluding in 1989—over one hundred twenty-
five years after enactment—that the legislative

[26] McCormick, Evidence (3d ed), § 86, p 202.
[27] See n 23.

purpose in 1861 was other than the literally stated purpose of precluding the spouse from "be[ing] examined" in court.

There being no legislative intention, expressed or implied, that the spouse may be examined once the secret is disclosed and it is no longer a private matter, the only expression in the statute being that the witness may not "be examined," this Court's well-considered and well-regarded decision in *Briesenmeister* should not be overruled. *Briesenmeister* was decided by justices who served on this Court relatively soon after the enactment of the testimonial privileges and who thus were more likely than presently sitting judges or justices to have been aware of any "secrecy" or "privacy" rationale unstated but nevertheless intended by the Legislature.

BOYLE, J. (*dissenting*). The majority today reaches the conclusion that the exceptions contained in MCL 600.2162; MSA 27A.2162 do not apply to communications between spouses.

Preservation of marital harmony becomes mere rubric where one spouse is willing to testify against another in the circumstances described in the statute. Worse, it is a cruel and demeaning fiction justified by no purpose other than to promote the interest of the adverse spouse and having no effect save, as in this case, to obstruct the fact-finding process and to remind us that even in 1989 we are all not equal before the law.

Revised Judicature Act § 2162 should be construed so as to find the privilege inapplicable to the exceptions because the purpose of the statute was to remove common-law disability; the general public policy of this state is to accord married women full equality before the law, subject only to policy interests deemed paramount by the Legisla-

ture; and, where one of the situations listed in the statute has occurred, damage has been done to the marital relationship far more shocking than revealing a communication. In these situations, the Legislature has determined that protection of marital privacy is a less important societal interest than the right to testify fully as to a violation of civil or criminal rights.

As long ago as 1884, in the context of interpreting the predecessor statute which provided for an exception in cases of an action between spouses involving the title to separate property, this Court held that the exception applied to the privilege. The Court found that the identical words we consider today, "[N]or shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other, during the marriage," allowed a wife to testify as to promises made to her in the privacy of their chamber and with no one else present. In words equally applicable to this case, the Court stated:

> [T]he statute removes the common-law disability and permits either to testify to the facts which lie at the foundation of the ownership of the property as fully as if such marriage relation did not exist. The clause of the statute prohibiting either, during marriage or afterwards, without the consent of both, being examined as to any communication made by one to the other during the marriage, *does not apply to cases of this kind.*
>
> * * *
>
> No doubt society is interested in preserving the harmony of the marriage relations and anything which tends to disrupt those relations is to be discountenanced. The Constitution has secured to a married woman the right of acquisition, enjoyment and disposition of her separate property, and

the Legislature has given her the same standing in the courts with respect thereto as if she were unmarried; and there is no good reason why she should not have the means of protecting those rights as fully against her husband as against any other person. . . . So far as the destruction of harmony in the family circle is concerned, the injury is inflicted when the husband or wife fail[s] to keep their agreements . . ., and the strife and bickerings consequent thereon long precede the shock caused by permitting the party to testify respecting the title to such property. [*Hunt v Eaton,* 55 Mich 362, 365-366; 21 NW 429 (1884). Emphasis added.]

The majority dismisses the decision in *Hunt* as based not on the application of the exceptions to the communications privilege but, rather, on the idea that the statements involved were not confidential since they involved business transactions. This interpretation ignores the fact that the Court clearly concluded in *Hunt* that the communications privilege simply did not apply to "cases of this kind," and that "[t]o hold that it did would nullify in a great measure the language which precedes it and make a limitation upon the exception where in my opinion none was intended." *Id.,* p 366. Indeed, the majority in this case, by arguing that the communication in *Hunt* was not confidential, apparently chooses to ignore the statement by Justice CHAMPLIN that he did "not consider it necessary to indicate the nature of the communications between husband and wife about which neither is allowed to be examined . . . ." *Id.*

In 1887, in interpreting an amendment to the statute which excepted cases "where the cause of action grows out of a personal wrong or injury done by one to the other," 1885 PA 211, the Court said:

Not only the ends of justice, but public policy alike, require that she should be at liberty to complain and prosecute as if she were a *feme sole* in criminal cases. The law will not allow the marriage relation to be so used as to protect the criminal, or shield him from the just penalty for his crime.

\* \* \*

Thus it will be seen that it is the policy of the law to extend the right of the wife to bear testimony against the husband in cases of violation of her personal rights, rather than to restrict it. [*People v Sebring,* 66 Mich 705, 707; 33 NW 808 (1887).]

Despite these venerable statements of policy regarding the purpose of the statute and the express holding that the communications privilege did *not* apply to the statutory exception, the majority concludes that our Legislature, in enacting the Revised Judicature Act in 1961, intended to permit a defendant spouse to silence his wife in the situations excepted by the statute. Surely a contemporary Legislature was as cognizant of the notion "that there is no good reason why she should not have the means of protecting [her] rights as fully against her husband as against any other person" and that the injury to the marital relationship is done when the "personal wrong or injury" (or "crime committed against the children of either or both") occurs. MCL 600.2162; MSA 27A.2162.

To presume a sunset of enlightenment in a Legislature that has repeatedly demonstrated a commitment to a woman as *"feme sole"* in a legal

matter is to ignore history.[1] I cannot agree that the Legislature intended to reimpose the common-law disability and prevent a willing[2] witness, usually a woman, from "testify[ing] . . . as fully as if such marriage relation did not exist."

Despite prior precedent, sound public policy, and simple justice, the majority holds that, for want of a semicolon, the Legislature intended to deprive this mother of the right to testify as to her husband's admission to sexual contact with her daughter. I disagree and would reverse the decision of the Court of Appeals.

I

The marital privileges can be traced to the period of our history when a woman, possessing no legal identity of her own, was treated as the chattel of her husband. The unity of identity between a husband and wife affirmed and advanced these cultural perceptions. Consequently, two canons of medieval jurisprudence came into play.

> [F]irst, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one. From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife.

[1] In 1974, the Legislature acted to permit sexual assault prosecutions against a spouse where the parties were living apart and one or the other had filed for separate maintenance or divorce, MCL 750.520*l*; MSA 28.788(12); it now has permitted such actions between legally married spouses, without limitation, 1988 PA 138.

[2] The exceptions permit a willing spouse to testify against the other spouse. *People v Love*, 425 Mich 691; 391 NW2d 738 (1986). They do not require such testimony.

[*Trammel v United States*, 445 US 40, 44; 100 S Ct 906; 63 L Ed 2d 186 (1980).]

Quite simply, a wife was disqualified from testifying against her husband.[3] This practice later became a gender-neutral rule of exclusion. When this general rule of disqualification fell into disfavor, it was replaced by a privilege to exclude spousal testimony. *Id.* See *Developments in the law, privileged communications*, 98 Harv L R 1450, 1563-1565 (1985). With the passage of 1861 PA 125, Michigan codified the rule of conditional competency or spousal bar and enacted a separate privilege protecting from disclosure at a judicial proceeding all confidential communications between spouses made during the marriage.[4] Thus, the term marital privilege refers to two distinct privileges: the right to bar the spouse from testifying

[3] Early Michigan statutes contained such a form of spousal disqualification. See 1857 CL 4339:

*No person shall be excluded from giving evidence in any matter, suit or proceeding, civil or criminal,* by reason of crime, or of any interest of such person in the matter in question, or in the event of the suit or proceeding in which his testimony may be offered, unless such person be individually a party, named in the record, to such matter, suit or proceeding, or unless such matter, suit or proceeding be prosecuted or defended, either wholly or in part, in the immediate and individual behalf of such person, or *unless such person be the husband or wife of such party;* but when such person is a party, he may be a witness under the rules prescribed by statute. [Emphasis added.]

[4] See 1861 PA 125, § 4342:

A husband shall not be examined as a witness for or against his wife, without her consent, nor a wife for or against her husband, without his consent; nor shall either, during the marriage or afterwards, be, without the consent of both, examined as to any communication made by one to the other during the marriage; but in any action or proceedings instituted by the husband or wife in consequence of adultery, the husband and wife shall not be competent to testify.

and the right to prevent the spouse from revealing confidential communications.

The privilege to bar the testimony of a spouse is defended on the basis that it prevents marital discord. It is an offshoot of the rule of incompetency. *People v Love*, 425 Mich 691, 700; 391 NW2d 738 (1986) (opinion of Cavanagh, J.). The confidential communications privilege is said to inspire marital confidences. McCormick, Evidence (3d ed), § 86, p 201. Over time, case law has blurred the justifications, and it is sometimes observed that the validity of both privileges rests on the utilitarian ground of promoting marital harmony.[5] See *Privileged communications, supra,* pp 1578-1579; *Love, supra,* p 711, n 1 (opinion of Boyle, J.).

Criticism of both marital privileges centers on the fact that they conflict with the jurisprudential objective of advancing the truth-finding function.

[5] In addition to this often quoted justification, one commentator has identified three additional grounds for the continued life of the marital privileges. The privileges are sometimes said to promote individual rights by allowing the protection of the right to privacy. The contempt power of the court is viewed as an intrusive force, and one spouse is allowed to shield the other from having to choose between loyalty to the state and loyalty to one's spouse. This view is criticized by those who would observe that in such a case the privilege is better vested with the witness because too often valuable evidence is lost when one spouse would voluntarily testify against the other.

Similarly, the marital privileges are justified on the ground that by avoiding the situation whereby a court is forced to compel one spouse to testify against the other, the public's perception of the judicial system is enhanced. Critics respond, however, that this argument assumes popular awareness of the law and could work to denigrate the public's perception of the system when a defendant-spouse avoids prosecution by preventing a willing spouse from testifying.

A final explanation of the privileges is that they perpetuate the role of male domination in the marriage. It is claimed that because the privileges are more often invoked by a husband to bar the testimony of his wife, the privileges will benefit men more often than women and will serve to legitimize and solidify social perceptions of the marriage status quo and reinforce the subordinate view of women historically rooted in the male domination of the marital relationship. This view assumes popular knowledge of the marital privilege.

As Professor McCormick observes, "while the danger of injustice from suppression of relevant proof is clear and certain, the probable benefits of the rule of privilege in encouraging marital confidences and wedded harmony is at best doubtful and marginal." McCormick, *supra,* § 86, p 202. Thus, even at common law the spousal bar was withheld from the husband in prosecutions for wrongs directly against the wife.[6] Similarly, when in this country statutes were enacted providing for the privilege for confidential communications, an exception to the confidential communication privilege was incorporated and frequently extended in cases involving wrongs against a spouse, particularly those of a violent nature.

As Professor McCormick explains:

> The common law privilege against adverse testimony of a spouse was subject to an exception in cases of prosecution of the husband for offenses against the wife, at least those of violence. When nineteenth century statutes in this country limited and regulated this privilege and the incompetency of spouses as witnesses and defined the new statutory privilege for confidential communications the common law exception above mentioned was usually incorporated and extended, and frequently other exceptions were added. Under these statutes it is not always clear how far the exceptions are intended to apply only to the provisions limiting the competency of the spouses as witnesses, or whether they apply also to the privilege for confidential communications. *Frequently, however, in the absence of a contrary decision, it is at least arguable that the exception does have this latter application, and in some instances this intent is clearly expressed. Any other result would, in principle, indeed be difficult to justify.* [McCormick, *supra,* § 84, pp 198-199. Emphasis added.]

---

[6] 8 Wigmore, Evidence (McNaughton rev), § 2239, pp 243-247.

This Court also has recognized that the marital privileges stand contrary to the maxim "the public has a right to every man's evidence . . . ." *Love, supra,* p 712 (opinion of BOYLE, J.); 8 Wigmore, Evidence (McNaughton rev), § 2192, p 70. Therefore we have consistently recognized that privileges

> must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." [*Love, supra,* pp 700-701 (opinion of CAVANAGH, J.); p 712 (opinion of BOYLE, J.); see also *O'Toole v Ohio German Fire Ins Co,* 159 Mich 187, 193; 123 NW 795 (1909).]

A

The majority's construction of the statute is that the statute is unambiguous and that the exceptions to the privilege to bar a spouse's testimony do not apply to confidential communications. One spouse may now apparently permanently prevent another from testifying to a confidential communication in a civil proceeding in which the spouses are adverse parties (such as "suits for divorces," and cases involving the title to the separate property of the husband or wife, in cases of "crime[s] committed against the children of either or both," and to those cases "where the cause of action grows out of a personal wrong or injury done by one to the other").

This analysis requires us to conclude that our Legislature does not extend even the common-law exception for crimes of violence against a spouse to

confidential communications. I am unwilling to ascribe such an intent to our Legislature.[7]

As the majority interprets the Legislature's intent, a wife is allowed to testify at her husband's trial for the sexual abuse of her daughter, but the exception does not extend to permit her testimony concerning his admission of the assault. Thus, on the retrial ordered today, the jury will not be allowed to learn of the defendant's explanation to his wife as to why this assault occurred and will be required to resolve this issue on the basis of the testimony of a child who was eight years old at the time of the alleged occurrence.

Assuming that the Legislature created marital privileges to promote marital harmony and marital privacy, I cannot agree that the Legislature that enacted this statute in 1961 found these interests so paramount as to bar all relevant proof that involves a private communication between spouses. To do so would leave women and their children without the means of protecting their rights "as fully against her husband as against any other person." *Hunt v Eaton, supra,* p 366.

As Professor Wigmore observed in discussing the common-law exception to the spousal bar:

> [I]f the promotion of marital peace, and the apprehension of marital dissension, are the ultimate ground of the privilege, it is an overgenerous assumption that the wife who has been beaten, poisoned or deserted is still on such terms of delicate good feeling with her spouse that her testimony must not be enforced lest the iridescent halo of peace be dispelled by the breath of disparaging testimony. And if there were, conceivably,

---

[7] Specifically, § 2162 excepts cases of divorce, bigamy, crimes against the children of either or both, personal wrong or injury done by one to the other, failure of spousal or child support, desertion and abandonment, and certain cases dealing with disputes over the title to property.

any such peace, would it be a peace such as the law could desire to protect? [8 Wigmore, *supra,* § 2239, p 243.]

**B**

A literal reading of the act appears to support the majority's result. However, the statute is ambiguous and this reading is not consistent with this Court's holding in *Hunt v Eaton, supra,* with the accepted axiom that "privileges should be narrowly defined and exceptions thereto broadly construed," *People v Love, supra,* p 700, nor with the long-established and recognized policy of the law "to extend the right of the wife to bear testimony against the husband . . . rather than to restrict it," *People v Sebring, supra,* p 707.

After no less than seventeen amendments and reenactment of the marriage privileges spanning nearly one hundred and fifty years of legislative action and despite these well-established guides to construction, the majority rejects Justice CHAMP-LIN's statement that the "statute removes the common-law disability and permits either to testify . . . as fully as if such marriage relationship did not exist," on the basis of the punctuation in the statute. *Hunt v Eaton, supra,* p 365.

When amended in 1869, the passage dealing with the spousal bar was split with a semicolon, and that clause was separated from the newly added property title exception by a comma:

> A husband shall not be examined as a witness, for or against his wife, without her consent; nor a wife, for or against her husband, without his consent, except in cases . . . . [1869 PA 84.]

That manner of punctuation is maintained in the present statute.

If we are to assume, as does the majority, that the Legislature intended this semicolon as a definite demarcation, we must also conclude that the exceptions apply only in the instance where a wife is asked to testify for or against her husband, but not when a husband is asked to testify for or against his wife. Of course, such a conclusion is wholly unjustified.

Furthermore, if the grammar and punctuation of § 2162 is as indicative of legislative intent as the majority believes, the significance of 1897 PA 212 should not be overlooked. Public Act 212 provided:

> That a husband may testify for or against his wife without her consent, and a wife may testify for or against her husband without his consent, in all criminal prosecutions, for bigamy: Provided, however, That nothing herein contained shall be so construed as to permit a husband or wife to testify against the other without the consent of both concerning any communications made by one to the other during the marriage.
>
> All acts or parts of acts conflicting with the provisions of this act are hereby repealed. [Emphasis omitted.]

When this exception for bigamy prosecutions was incorporated into the general privilege statute in 1915 PA 314, ch XVII, § 67, the express proviso precluding spousal testimony concerning confidential communications was eliminated. Had the Legislature intended the exceptions listed in the act to apply only to the spousal testimonial privilege, the proviso emphasizing that intent should have survived. In the absence of the proviso, the logical conclusion to draw is that the Legislature intended the exceptions to apply to both privileges. The majority, in effect, reads a proviso into the act where none exists and draws a contrary conclu-

sion. In this manner, the majority finds that the "clear and unambiguous" nature of § 2162 both commands the opposite result and forecloses a reasoned explanation of legislative purpose.

## C

The justification for the communication privilege is to protect marital harmony and encourage marital communication. Each exception in the statute represents an instance where the Legislature has balanced the interest in marital harmony against a competing and overriding interest in fully vindicating the witness or party spouse's rights. The majority focuses on the Legislature's purpose in 1861 and assumes that today one spouse is permitted to completely silence the other to uphold the integrity of marital confidences. Justice LEVIN's opinion, *ante,* pp 179–180. The proper focus, in my view, should be on the Legislature's purpose in 1961 when it recognized that in certain instances, such as civil cases in which the spouses are adversaries, cases involving harm to a child of either or both, or those in which a personal wrong or injury is done by one spouse to another, the privilege must yield to the need for probative evidence[8] in order to vindicate the rights in controversy.[9]

## II

### Even if the exceptions listed in § 2162 do not

[8] Various statutes are in accord. See California Evidence Code, § 985, 13A ULA 504, providing for exceptions to the confidential communication privilege for crimes committed against a child of either spouse. See McCormick, *supra,* § 78, p 189, n 10, 190, n 16.

[9] In light of the fact that this Court in *Love* declined the invitation to abrogate § 2162 pursuant to our rule-making authority, there appears to be no barrier to legislative consideration of the policy issue as to whether and when the exceptions contained in § 2162 apply to the confidential communications privilege or to adoption of the view in *Trammel* which vested the privilege in the witness spouse, MRE 501.

apply to the confidential communication privilege, defendant Hamacher waived the privilege when he failed to object to his wife's testimony at his preliminary examination.[10] This Court has long recognized that the communication privilege "is the privilege of the parties . . . and may be waived." *O'Toole, supra,* p 192; *Benson v Morgan,* 50 Mich 77, 79; 14 NW 705 (1883).[11] Such waiver may be express or implied. 8 Wigmore, *supra,* § 2340, pp 671-672. Implied waiver was found in *Benson v Morgan, supra,* where a husband who was present in court failed to object when his wife was called to testify against him. Similarly, in *People v Toner,* 217 Mich 640, 643-644; 187 NW 386 (1922), this Court concluded that when a defendant calls his wife as a witness in his defense, the marital privileges are waived as to all pertinent facts, and cross-examination need not be limited to facts elicited on direct examination. Here the defendant did not call his wife as a witness, but he did fail to object to her testimony at the preliminary examination. I would conclude that the defendant's failure to assert the spousal privilege at that examination operated as a general waiver of the privilege.

Once waived, a privilege may not be reasserted by a defendant at a later stage of the same proceeding or at any subsequent judicial proceeding.[12] As Professor Wigmore states:

[10] See anno: *Claim of privilege by a witness as justifying the use in criminal case of his testimony given on a former trial or preliminary examination,* 45 ALR2d 1354, § 3, pp 1355-1359; anno: *Use in subsequent prosecution of self-incriminating testimony given without invoking privilege,* 5 ALR2d 1404.

[11] See 8 Wigmore, Evidence, § 2340, p 671, "The spouse possessing the privilege may of course *waive* it." (Emphasis in the original.) For it is "the essence of the . . . privilege (as of every privilege) that it may be waived." *Id.,* § 2334, p 645.

[12] See, generally, *State v Clark,* 296 NW2d 372, 373 (Minn, 1980);

A waiver at a *former trial* should bar a claim of the [physician-patient] privilege at a later trial, for the original disclosure takes away once and for all the confidentiality sought to be protected by the privilege. To enforce it thereafter is to seek to preserve a privacy which exists in legal fiction only. [8 Wigmore, *supra,* § 2389(4), pp 860-861. Emphasis in the original.]

I see no reason to conclude that this rule should not apply equally to former proceedings in the same trial as well as to former trials.[13] Thus, a failure by the holder to assert the privilege by objection at the preliminary examination in the same case is a waiver of the privilege.[14]

The confidential communication privilege acts to hold inviolate the privacy of the marital relationship. When facts which might otherwise be privileged are disclosed for all to inspect, the purpose of the privilege is destroyed. Just as one cannot unring a bell, a secret once disclosed in open court is never again a wholly private matter.[15]

---

*Fraser v United States,* 145 F2d 139, 145 (CA 6, 1944), cert den 324 US 849 (1944).

[13] At least one other court has indicated that the rule does extend to other proceedings:

However, once the privilege is waived, the confidentiality sought to be protected is merely a legal fiction. We therefore hold that, once waived, *whether at a former trial or otherwise,* a patient cannot reassert his or her privilege. [*State v Mincey,* 141 Ariz 425, 439; 687 P2d 1180 (1984). Emphasis added.]

[14] See also *In re Postley,* 125 Misc 2d 416, 417; 479 NYS2d 464 (1984) ("Once waived, the privilege is waived for 'all time,' the statutory seal of secrecy having been broken"); *People v Lowe,* 96 Misc 2d 33; 408 NYS2d 873 (1978) (pretrial disclosure at a preliminary hearing waived the privilege regarding inquiry); *General American Life Ins Co v Ettinger,* 266 AD 876; 42 NYS2d 836 (1943) (waiver of the privilege in a separate action operates as a waiver in a subsequent proceeding); *People v Bloom,* 193 NY 1; 85 NE 824 (1908).

[15] This Court has discussed this issue once before, although not as the basis of a decision. In *Briesenmeister v Knights of Pythias,* 81

### III

## Finally, even if it was error to admit the testi-

Mich 525, 534-535; 45 NW 977 (1890), this Court stated, in dictum, that a privilege waived in a prior proceeding may be reasserted in a subsequent proceeding. *Briesenmeister* relied upon *Grattan v Metropolitan Life Ins Co,* 92 NY 274; 44 AR 372 (1883), which had already been overruled by *McKinney v Grand Street, PP & FR Co,* 104 NY 352; 10 NE 544 (1887). It was perhaps overly generous of the *Briesenmeister* Court to characterize *Grattan* as "overruled" in that the recapture of privilege theory mentioned in *Grattan* was merely an alternative ground for the court's conclusion that the evidence was admissible. As the *Grattan* court initially explained:

> [T]he evidence was inadmissible for two reasons. What the witness testified to on a former trial, he being living and present for examination on the second trial, could only be proved for the purpose of contradicting him or of refreshing his memory. No emergency of that kind existed to justify proof. [*Id.,* p 287.]

As the *McKinney* court later acknowledged, no authority was provided in *Grattan* for the alternative ground of privilege by which the evidence was excluded.

Furthermore, *Briesenmeister,* like *Grattan,* involved the testimony of the treating physician of the deceased in an action upon a life insurance policy in which the insurer claimed forfeiture by fraudulent statement of health on the part of the insured. The error alleged in *Briesenmeister* was the exclusion of certain evidence alleged to be privileged only *after* its admission. The Court agreed that the trial court erred in striking at least portions of the testimony, given that the objection was late, and reversed for a new trial. However, the *Briesenmeister* Court suggested that the privilege might be reasserted at the new trial.

In my view, *Briesenmeister* does not control in this case. Given the substantial changes in this reasoning behind the continued existence of statutory privileges such as the spousal bar in the nearly one hundred years since *Briesenmeister* was decided, the fact that the Court's discussion in that case of the recapture of a privilege was clearly *dictum* and the lack of authority for its conclusion, I find *Briesenmeister* unpersuasive. To the extent that *Briesenmeister* has any precedential value, it is narrow indeed and has no application on these facts.

The two cases cited by Justice LEVIN in his separate opinion, *Burgess v Sims Drug Co,* 114 Iowa 275; 86 NW 307 (1901), and *Maryland Casualty Co v Maloney,* 119 Ark 434; 178 SW 387 (1915), do stand for the proposition that a waiver does not necessarily preclude reassertion of a privilege at a subsequent proceeding. However, I question their dispositiveness in light of the fact that the great weight of more recent authority supports the opposite conclusion. See, e.g., *Cerro Gordo Charity v Fireman's Fund American Life Ins,* 819 F2d 1471 (CA 8, 1987); *State v Bishop,* 187 NJ Super 187; 435 A2d 1365 (1982); *State v Mincey, supra.*

mony, the defendant's wife would be considered unavailable as a witness due to defendant's assertion of the spousal privilege.[16] As such, her testimony at the preliminary examination, to which defendant failed to object, should be received under MRE 804(b)(1), which provides an exception to the hearsay rule for "[t]estimony given as a witness at another hearing of the same or a different proceeding . . . ."

This Court has recognized the admissibility of such prior testimony even though testimony at trial was precluded by defendant's assertion of the spousal privilege. For example, in *People v Love,* *supra,* p 708, Justice CAVANAGH indicated that if the witness spouse "voluntarily testified at the [preliminary] examination, her recorded testimony would have been admissible at trial as substantive evidence pursuant to MRE 804(b)(1)," even though she had been precluded from testifying at trial because of the spousal privilege. (Opinion of CAVANAGH, J., with LEVIN, J., concurring.) See also *People v Whalen,* 129 Mich App 732, 738; 342 NW2d 917 (1983) ("Consequently, . . . if the spouse testified at the preliminary examination . . . while

---

[16] The majority reaches the conclusion that the prosecution waived the waiver argument as well as the prosecution's alternative argument that defendant's wife's prior recorded testimony at the preliminary examination would have been admissible under MRE 804(b)(1) had she been precluded from testifying at trial by defendant's invocation of the spousal privilege, since she would then have to be deemed unavailable as a witness. MRE 804(a)(1) defines "unavailability as a witness" to include situations in which the declarant "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of [the] statement . . . ."

I would conclude that the prosecution is not precluded from advancing either argument by its failure to assert that argument prior to filing its brief with this Court. Prior to the decision of the Court of Appeals on remand, the prosecution, as appellee, was not required to present any particular arguments in support of the prior decisions in its favor. Only when it became the appellant before this Court was it required to raise such arguments which it has, in fact, done.

married to the defendant and the marital privilege was not properly asserted, the preliminary examination testimony is admissible at trial when the marital privilege is asserted by the defendant").

### CONCLUSION

The Court of Appeals erred in reversing the conviction because the exceptions listed in § 2162, more specifically the exception concerning crimes against the children of either or both, apply to the communications privilege.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.